Michael PERLI, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.

No. 81 Civ. 5983.

United States District Court, S. D. New York.

July 16, 1982.

Michael Perli, pro se.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for defendant; Carolyn Simpson, Asst. U. S. Atty., Annette H. Blum, Regional Atty., Region II, Jennifer S. Eng, Asst. Regional Atty., Dept. of Health and Human Services, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, appearing here pro se as he did in the administrative proceeding below, commenced this action pursuant to 42 U.S.C. § 405 of the Social Security Act to review a decision of the defendant Secretary that plaintiff had elected to receive retirement insurance benefits 14 months prior to his 65th birthday; that his benefit amount had been correctly computed and that due to an erroneous application of the special computation method to which he was not entitled, he had been overpaid $1,338.

The Secretary moves pursuant to 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings dismissing the complaint. The Secretary's determination must be upheld if it is supported by substantial evidence on the record as a whole—that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [1] Thus while the Court does not substitute its judgment for that of the Secretary, neither does it act as a "rubber stamp" of administrative determinations.[2] And if it is found, in "scrutiniz[ing] the whole record . . . [that] reliance is placed on one portion of the record in disregard of overbalancing evidence to the contrary, the court may then interfere with the Secretary's conclusion." [3]

Applying the foregoing standards and upon a word-by-word study of the entire administrative record, the conclusion is compelled that the Secretary's decision is not supported by substantial evidence and, indeed, is the product of error and confusion within the agency itself. In short, to borrow a phrase where another standard of review is applicable, a review of the entire record leaves "the definite and firm conviction that a mistake has been committed." [4]

The basic and prime factual issue is whether plaintiff elected to receive reduced retirement insurance benefits (the "Benefits") before age 65. Where an individual elects to receive such Benefits, they are reduced according to a specified formula.[5] Plaintiff filed his application for retirement benefits on November 12, 1971. He listed the date of his birth as January 7, 1907. Question 18 of the application reads:

This application for retirement benefits may be retroactive for as many as 12 months from the date it is filed but not for any month before you reached age 62. If you choose to receive benefits before you reach age 65, your benefits will be payable at a reduced rate. They will continue at a reduced rate even after you reach age 65. If there are any months before you reach age 65 for which you do not wish to claim benefits, enter the months and give your reason.[6]

Plaintiff did not answer question 18. No months were listed. Thereafter payments were made at the reduced benefit rate retroactive to November 1970, twelve months prior to the month he filed his application. The reduced payments were made until 1979, when plaintiff inquired of the Social Security Office whether he was eligible for the computation method resulting in a special minimum benefit for persons with thirty years of coverage and low wages. A claims representative tentatively concluded he was entitled to a higher benefit by the application of this method. Plaintiff was advised on October 23, 1979 by the North-

1. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

2. Cf. *Martin v. Secretary of HEW*, 492 F.Supp. 459, 461 (D.Wyo.1980).

3. *Flores v. Dep't of HEW*, 465 F.Supp. 317, 320 (S.D.N.Y.1978) (*quoting Hofacker v. Weinberger*, 382 F.Supp. 572, 576 (S.D.N.Y.1972)).

4. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

5. 42 U.S.C. § 402(q)(1)(A).

6. Record at 46.

eastern Program Service Center[7] that a recalculation had been made and under amendments to the Social Security Act he was entitled to increased monthly payments, and later sent him a retroactive check for the difference between the amount he received at the old rate and the amount he should have received at the new rate.

Plaintiff, however, appealed, contending he was entitled to even higher benefits. The result of his endeavors was a notification in February 1980 that he had been overpaid by $1,338.50 because the revised computation was in error and that the agency would withhold $51 each month for twenty-seven months to recoup the claimed overpayment. The determination by the agency that an error had been made was based upon an assumption that plaintiff had made an election to accept reduced amounts.

The factual issue of whether the plaintiff elected to receive reduced benefits which resulted in a reduction of his monthly benefits was squarely presented to the Administrative Law Judge at a hearing held under section 205(b) of the Act.[8] The plaintiff testified that at the time of the filing of his application he made no election;[9] that he was advised to get his application in three months before eligibility so that his payments would start on time. The clear thrust of his testimony is that he was not aware and not advised that a failure to answer question 18 would constitute an election to accept reduced benefits and it was not his intention to do so. Moreover, the date of the filing of the application, less than two months before he was to reach

age 65, by itself indicates that he anticipated retirement at that age and it is unreasonable to find that he elected to accept reduced benefits at that point.

The Administrative Law Judge (the "ALJ"), in his evaluation of the evidence, noted that the Reconsideration Determination of the agency was based upon the view that plaintiff

elected to receive reduced benefits, resulting in a reduction of his monthly benefit. However, the claimant's application filed November 12, 1971 does not appear to make such election and on the contrary appears to anticipate retirement at age 65; the claimant was born January 7, 1907 and became 65 on January 7, 1972. The claimant's statement of November 12, 1971 (Exhibit 2) also supports the view that the date of his resignation from his employment was to be December 31, 1971 and makes it unreasonable to find that he would elect reduced benefits at that point.[10]

Based on this and other fact determinations, the ALJ found that plaintiff had not been given his full benefits since it was erroneously assumed that he elected to receive reduced benefits. On appeal, the Appeals Council, upon the same record,[11] decided plaintiff had been paid a higher benefit based upon an incorrect computation and had been overpaid by $1,338. The Council, however, made no finding as to whether recovery of the overpayment may be waived since no initial determination had been made on that issue.

Item 18 is not a model of clarity. It does not state that a failure to reply constitutes

7. *Id.*, Exh. 10, at 67.

8. 42 U.S.C. § 405(b).

9. Record at 22, *passim.*

10. Decision of the ALJ, Record at 10.

11. The only exceptions were a memorandum from the Office of the Director of the Northeastern Program Service Center, which also expressed the view that plaintiff made an election to accept reduced benefits, and the plaintiff's reply. Thus the memorandum states "[i]t is noted that on application for retirement in-

surance benefits dated November 12, 1971 Mr. Perli did not reply to Item 18 *which would indicate that he did wish* to receive reduced benefits." Record at 81. Plaintiff's reply states: "I don't believe that it's my fault that the design of the application for retirement which I signed 11/12/71 did not specify that I would have to receive reduced benefits unless I specifically restricted the scope of the application to unreduced benefits at age 65, which was my true intention." *Id.* at 85. (Emphasis supplied above.)

an election to accept reduced benefits, as the Appeals Council found in reversing the ALJ. The Council, with respect to plaintiff's position that he had no such intention and that the wording of Item 18 was confusing, was of the view "that he should have questioned any wording which confused him before he signed the application" and observed that he failed to question the subsequent award notice advising him of the amount of the benefit amount and the months for which it was payable or the large retroactive check sent to him shortly thereafter.[12] The same position is advanced by the Government in support of its motion.[13]

Under the circumstances of this case, the Court does not agree that the failure of plaintiff to respond to Item 18 constituted an election to accept reduced benefits or as the Government now states it, had he done so it "would have indicated that [he] did not want reduced benefits." [14]

■ The Social Security Agency after all is not dealing at arm's length with those who are entitled to participate under the Act. The benefits are not largesse but a matter of right. The Agency has a responsibility to effectuate its purposes and to see that those who are entitled to its benefits do not surrender them unwittingly through inadvertence or technicality. Not only is Item 18 ambiguous but it may be characterized as an example of bureaucratic gobbledygook.

There is not a single word in Item 18 to suggest, much less advise, an applicant that failure to "enter the months and give your reason" constitutes an election to accept reduced retirement payments. The ambiguity is further emphasized by statements in Item 18 such as, "[t]his application for retirement benefits *may be* retroactive for as many as 12 months from the date it is filed" and "*[i]f* you choose to receive benefits before you reach age 65" (emphasis supplied).

Language such as "may be retroactive" and "if you choose" certainly does not indicate to the average person that the failure to respond to a question is an election to accept reduced benefits. Certainly it would have been a simple matter to have included a direct and specific inquiry such as "Do you elect to receive benefits at reduced payments before 65? Answer Yes or No." This failure is highlighted by the fact that at the very end of the application, with respect to "The Supplementary Medical Insurance Benefits Plan," the following appears:

Do you wish to enroll in the supplementary medical insurance benefits plan?...
☐ Yes      ☐ No
Sign below regarding medical insurance benefits plan.[15]

■ The Social Security Act is a remedial statute to be broadly construed and liberally applied.[16] Its objectives should not be frustrated by arcane language employed by the agency charged with responsibility to achieve those objectives. In any event, the basic rule of construction should be applied—that where an instrument contains

---

12. Decision of Appeals Council, Record at 10.

13. Government's Memorandum of Law at 6. Plaintiff, in opposing this motion, states that upon reporting to the Social Security Office a Miss Woods or a Social Security interviewed assisted him in filling out the application; that she asked the questions and filled in the answers and when she came to question 18 said "I will leave it blank because you are not retiring at 62 or 63 but at 65, so this does not apply to you" and that she finally asked him to sign and also to sign at the bottom of the last page of the application which states, "Answer the question below only if you are now AGE 65 or older, or if you will reach AGE 65 in this month, or one of the next 3 months." He thereupon signed and except for his signature the written answers are in the handwriting of Miss Woods. Plaintiff's Memorandum at 1–2. The Court has not considered this statement since plaintiff did not give such testimony at the hearing and the Court's determination must be confined to the record.

14. Government's Memorandum of Law at 6.

15. Record at 46.

16. *See, e.g., Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2d Cir. 1975) (*quoting Gold v. Secretary of HEW,* 463 F.2d 38, 41 (2d Cir. 1972)); *Conklin v. Celebrezze,* 319 F.2d 569 (7th Cir. 1963).

**398**

an ambiguity, it is to be resolved against the draftsman of the language employed—here, the Secretary.

Whether plaintiff intended to and did elect to accept reduced payments was an issue of fact that involved the credibility of the plaintiff viewed against all the surrounding circumstances. The ALJ had the benefit of the demeanor evidence which the members of the Appeals Council did not. He surely was in a better position to appraise the credibility of plaintiff and to draw the reasonable inference and conclusion from the totality of the evidence.[17] The Appeals Council did not consider (as the ALJ did) why plaintiff, who was within two months of his 65th birthday, as a matter of common sense would elect to accept reduced payments which would continue beyond his 65th birthday.

The observation of Chief Judge Kaufman is appropriate in this case:

> Although preservation of the fisc is a laudable goal, public officials must pursue it with discretion, lest deserving individuals be deprived of payments Congress clearly intended them to have. This maxim applies with even greater force when the benefits are not governmental largesse, but instead have been purchased by or for the claimant.[18]

■ The Court finds that the relevant evidence is such that a reasonable person would not accept the conclusion that plaintiff elected to accept reduced payments; the finding of the Secretary that plaintiff made such an election is not supported by substantial evidence. Accordingly, the finding is reversed and the matter is remanded to the Secretary to compute the payments to which plaintiff is entitled based on that finding.

So ordered.

**17.** *See Miles v. Harris,* 645 F.2d 122, 124 (2d Cir. 1981) (ALJ has discretion to rely on his own observations); *cf. Dyer v. MacDougall,* 201 F.2d 265 (2d Cir. 1952).

**18.** *Rosenberg v. Richardson,* 538 F.2d 487, 488 (2d Cir. 1976).