George W. DAVIS, Plaintiff,

v.

Margaret M. HECKLER, Secretary,
Health and Human Services,*
Defendant.

Civ. A. No. 82–1927.

United States District Court,
District of Columbia.

June 24, 1983.

---

* Margaret M. Heckler, the present Secretary of Health and Human Services, has been substituted for Richard S. Schweiker, her immediate predecessor, in accordance with Fed.R.Civ.P. 25(d)(1).

Lawrence E. Williams, Washington, D.C., for plaintiff.

Stuart H. Newberger, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

This action is brought pursuant to 42 U.S.C. § 405(g) whereby plaintiff seeks Social Security disability payments which he alleges were improperly denied to him by the defendant, through her Administrative Law Judge, whose decision became final as the Secretary's decision when subsequently upheld by the Appeals Council of the Social Security Administration of the Department of Health and Human Services (HHS). In his motion for judgment to reverse the defendant's decision, plaintiff asserts that defendant's determination, unsupported by substantial evidence, constituted an abuse of discretion. In response, defendant denies that plaintiff is entitled to the benefits and has moved for judgment affirming the decision. For the reasons set forth below in this Memorandum Opinion, and in light of the remand of this case to the agency for further consideration and both motions are denied.

Plaintiff filed with the Social Security Administration an application for disability insurance benefits on May 13, 1981, claiming he was disabled due to certain enumerated impairments. Basing the decision on hospital records and physicians' reports, and concluding that Davis' condition did not prevent him from working, HHS disapproved his claim.[1] Denied reconsideration on September 24, 1981, plaintiff was granted a hearing before an Administrative Law Judge (ALJ) on March 9, 1982. The ALJ denied plaintiff's claim on March 25, 1982, finding that although plaintiff's impairments caused him to experience "abdominal discomfort and infrequent episodes of acute pain", his allegations of continual, disabling pain were not credible. Accordingly, the ALJ held that plaintiff's impairment did not preclude "performance of his previous work as a custodian or porter." Record at 12. On March 31, 1982, plaintiff sought review with the Appeals Council. The Council, pursuant to Social Security Regulation No. 4, 20 C.F.R. § 404.970 (1982), concluded on May 13, 1982 that plaintiff's case did not qualify for review.

Born in May, 1930, plaintiff has completed nine years of formal education. At the time he sought disability benefits, he had a background of nine hospital admissions within the prior five years. All of the admissions involved, at least in part, recurrent pancreatitis. Since his claim for benefits he has had at least one additional admission. In 1975, plaintiff underwent an exploratory laparotomy and, because his pancreas was inflamed, no surgery resulted. In 1981, he was successfully operated on to remove blockage present in the distal common bile duct. Physician reports from 1974 to 1981 indicate that plaintiff's ailments include chronic hepatitis alcoholic in origin, chronic recurrent pancreatitis alcoholic in nature, diabetes mellitus, essential hypertension, chronic gastritis, and rheumatoid arthritis. Record at 124–62. Plaintiff has been prescribed medication to relieve his pain and overall discomfort, in addition to having been given dietary instructions which at times he admittedly failed to follow. Record at 125. He testified that while his enlarged liver produces almost constant pain for which he takes daily medication, he suffers no discomfort from the hepatitis. The chronic pancreatitis and gastritis cause decreased appetite, require daily

---

1. An evaluation form, to be completed "if claimant has an impairment which does not meet or equal the listings but is more than slight" was checked by a reviewing physician on September 18, 1981, at the exertional level of "light work". Record at 140. This may have reference to the disability determination, Record at 85, dated September 22, 1981, which indicated (seemingly by the same physician) that Davis retains the capacity to return to work as a porter, a job described as "light work" in the Social Security Administration's *Dictionary of Occupational Titles.*

medications which lessen but do not relieve constant pain, Record at 52–56, and are, if considered severally from the other ailments, the most disabling factors, according to plaintiff and the documentation. The diabetes has for several years been well controlled by daily injections of insulin but promotes drowsiness, lessened appetite, blurred vision and pain due to the swelling of his hands. Record at 40–41. The hypertension and associated headaches are controlled by medication. His rheumatoid arthritis, reflected primarily in his right shoulder and arm, produces constant pain and, in his estimation, severe limitations on his ability to lift, carry, or sweep. He takes medication with a codeine base to relieve, in part, this problem. Record at 49–52. Cardiac arrythmia produces occasional but acute pain, Record at 65–67, but Davis contends he is "short-winded" and can only climb two or three steps. Record at 67–69.

Prior to surgery in 1981, plaintiff had been employed as a waiter, school custodian, a porter and attendant in a supermarket, a furniture handler, and a railroad car cleaner. From 1976 to 1979, he was not employed. Subsequent to the 1981 surgery, the record indicates that plaintiff has not resumed working.

▉ A federal court may not reweigh the evidence presented to it when reviewing a disability claim decision made by the Social Security Administration, nor may it replace the Secretary's judgment concerning the weight and validity of the evidence with its own. *DiBenedetto v. Secretary of the Department of Health and Human Services,* 518 F.Supp. 786, 787 (D.D.C.1981), *Wesley v. Secretary of Health, Education and Welfare,* 385 F.Supp. 863, 865 (D.D.C. 1974). "In these matters deference is to be afforded the administrative decision and it is not for the trial court to review *de novo* the Secretary's final decisions as to findings of fact and the reasonable inferences to be drawn therefrom." *Reyes v. Secretary of Health, Education and Welfare,* 476 F.2d 910, 914 (D.C.Cir.1973). Nor, however, may the Court merely act as a "rubberstamp" to administrative decisions. *Perli v. Schweik-*

*er,* 543 F.Supp. 394, 395 (S.D.N.Y.1982). Rather, it is the duty of the Court to "carefully scrutinize the entire record," *Klug v. Weinberger,* 514 F.2d 423, 425 (8th Cir. 1975), in order to determine whether the Secretary's decision is supported by "substantial evidence," as provided in 42 U.S.C. § 405(g). *Parker v. Harris,* 626 F.2d 225 (2d Cir.1980); *Champion v. Califano,* 440 F.Supp. 1014, 1015 (D.D.C.1977). In *Richardson v. Perales,* 402 U.S. 389, 398, 91 S.Ct. 1420, 1425, 28 L.Ed.2d 842 (1971), the Supreme Court defined this requisite standard to be "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 401, 91 S.Ct. at 1427, citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

"Substantial evidence" does not merely refer to the requisite quantitative evidence necessary to uphold an ALJ decision. It is a qualitative standard as well, as the evidence must address the necessary statutory test for disability benefits eligibility provided in 42 U.S.C. § 423(d)(1)(A). The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* Inability to engage in substantial gainful activity not only includes inability to do his previous work but requires as well an inability, ". . . considering his age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

Regulations have been promulgated as an assistance in evaluating whether a claimant has satisfied statutory requirements. Under 20 C.F.R. § 404.1520(a)–(f) (1982) a se-

quential step process is considered; a finding of no disability at any one of these sequential steps, dictates an end to the inquiry. Under the first step in the evaluation, the claim will be denied if the claimant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Similarly, if a severe impairment is not proved, disability has not been satisfied. 20 C.F.R. § 404.1520(c).[2] If the claimant suffers from a less severe impairment and therefore does not meet the criteria of Appendix 1 (Listing of Impairments), the Secretary must determine whether he retains the ability to perform either his former work or less onerous employment. If he can pursue his former work, he is not entitled to disability benefits. See 20 C.F.R. § 404.-1520(e). Lastly, if there exists an inability to return to past employment or a less demanding occupation, one's "residual functional capacity[,] ... age, education, and past work experience" are evaluated to determine, by an individual assessment of each of the claimant's job qualifications (abilities and limitations) measured against each of those factors, whether he is able to engage in other work. 20 C.F.R. § 404.-1520(f).

■ The Secretary must also consider the existence, if any, of jobs in the national economy that could be performed by a person having claimant's qualifications. *Id.;* 20 C.F.R. §§ 404.1566–404.1569. *See, Heckler v. Campbell,* —— U.S. ——, ——, 103 S.Ct. 1952, 1956, 76 L.Ed.2d 66 (1983).

It should be noted that an individual must adhere to prescribed treatment in order to be eligible to receive benefits, "if this treatment can restore [one's] ability to work." 20 C.F.R. § 404.1530 (1982).

Since the Secretary determined here that Davis was able to pursue his former work, and therefore held him ineligible for disability benefits, she did not assess whether his abilities, limitations, and overall qualifications would allow his engagement in other

work and, if so, whether there were jobs existing in the national economy that this claimant could perform.

Accordingly, if in light of the above, the Secretary's determination in accepting the decision of the Appeals Council (which upheld the ALJ's decision) is supported by substantial evidence, the Court must affirm the Secretary's decision. If the Secretary's decision cannot be affirmed, the matter would have to be remanded to the agency for further consideration.

■ Mindful that it is within the province of the ALJ, and not the Court, to evaluate conflicting evidence, *DiBenedetto,* 518 F.Supp. at 788, this Court's obligation nonetheless, to scrutinize the record, cannot be minimized: "if, for example, reliance has been placed upon one portion of the record to the disregard of overwhelming evidence to the contrary, the courts are ... bound to decide against the Secretary." *Ainsworth v. Finch,* 437 F.2d 446, 447 (9th Cir.1971), *quoting Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir.1964).

At the hearing, the ALJ heard extensive testimony from Davis concerning his age, lifestyle, work history, ailments, complaints of pain and was able also to personally observe plaintiff's physical demeanor. In addition, the ALJ had before him hospital records dated from 1974 to the present, as well as detailed physician reports prepared by several doctors.

■ Although all these factors, "(1) medical data and findings; (2) expert medical opinions; (3) subjective complaints; and (4) plaintiff's age, education and work history," are proper elements to be considered by an ALJ in considering a plaintiff's claim, *DiBenedetto,* 518 F.Supp. at 787, uncontradicted expert opinion of a treating physician should be accorded considerable deference by the ALJ. "The expert opinions of a treating physician as to existence of a disability are binding on the fact finder unless

---

**2.** The regulations recognize certain impairments as so severe to preclude a person from pursuing any gainful work. See 20 C.F.R. § 404.1520(d) (1982) (referring to impairments listed at 20 C.F.R. pt. 404, subpt. P, App. 1). If the claimant establishes that he has one of those impairments so listed he will be considered disabled, and the inquiry will end.

contradicted by substantial evidence to the contrary." *Aubeuf v. Schweiker,* 649 F.2d 107, 112 (2d Cir.1981); *McLaughlin v. Secretary of Health, Education and Welfare,* 612 F.2d 701, 705 (2d Cir.1980) (*quoting Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978)); *Eiden v. Secretary of Health, Education and Welfare,* 616 F.2d 63 (2d Cir.1980); *Wander v. Schweiker,* 523 F.Supp. 1086 (D.Md.1981).

Here, close examination of the record dictates that the Court reverse the Secretary's determination that plaintiff is not disabled, as substantial evidence does not exist to support the ALJ's decision that plaintiff is able to resume past employment.

Dr. Ata O. Moshyedi, plaintiff's treating physician since 1974, consistently opined that Davis' numerous ailments were chronic in nature and caused him severe and continual pain. Record at 122, 124, 135–36. The doctor concluded that Davis' "clinical presentation had exceeded 12 months duration" and that he was "unable to return to work due to persistent abdominal pain," Record at 142; as early as May, 1981 he recommended that Davis "be retired on the basis of disability." Record at 115. Not only was this expert medical opinion uncontradicted by Dr. Kenneth Goldstein, defendant's evaluating physician, but Dr. Goldstein found plaintiff to be a "Thin, chroni-

cally ill appearing male," presently experiencing "significant abdominal pain." Record at 131. Nowhere in his report did that doctor state that plaintiff was able to work. Hence, although the opinion of plaintiff's treating physician is uncontroverted, the ALJ appears to have placed little if no weight on this unchallenged evidence, finding Davis' pain to be acutely episodic rather than chronic, despite Dr. Moshyedi's corroborated determination of chronicity. He ignored his own expert's findings of pain, which were not limited by any characterization such as "chronic" or "acute" or "episodic".[3] Independent of Dr. Moshyedi's findings referencing Davis' chronic, unbearable pain, indeed seeking those records to assist his evaluation, Dr. Goldstein still concluded that Davis was at that time in "significant" abdominal pain. Nowhere does defendant's doctor even suggest, much less confirm, the bland conclusion of the ALJ that Davis' impairments cause him abdominal "discomfort" and "infrequent episodes of acute pain".

Material facts in the record were disregarded. The ALJ found that Davis had three impairments, thus failing to consider at least two additional ailments reported both by plaintiff and numerous hospital/physician records.[4] Moreover, although

---

**3.** Dr. Goldstein, who examined plaintiff on July 15, 1981, at defendant's request, noted a history in his report, Record at 130, which, among other matters, discussed Davis' 80-pound loss of weight over the six–eight months immediately past and Davis' complaints of bilateral abdominal pain, dull on the left side but sharp on the right. On physical examination he related that Davis appeared "chronically ill", that he had full range of motion of all extremities, his neurological examination was within normal limits; he had marked right upper quadrant tenderness. His "impression" was:

"1) History of chronic alcoholism. 2) Chronic pancreatitis with resulting diabetes mellitus. 3) Abdominal pain, most likely related to the above."

It is likely to conclude that the mention of "abdominal pain" was in reference to the "chronic" pancreatitis listed directly above. It is also a fair conclusion that if the pancreatitis is chronic then the abdominal pain, "most likely related to the above" is equally chronic.

Whether Dr. Goldstein intended this conclusion or not his concluding assessment speaks for itself:

"He does suffer from chronic pancreatitis, which may be responsible for his weight loss. Full records of his medical care from his examining physician would be most helpful in fully evaluating him. He appears to be in significant abdominal pain at the present time."

**4.** The ALJ did not evaluate the impact of gastritis, which here resulted in complaints of constant pain and reduced appetite, necessitating medicine that caused frequent urination and kept plaintiff drowsy, or rheumatoid arthritis, which affected his right shoulder and arm, which influence plaintiff contends prevents the activities associated with a custodian (sweeping and carrying), porter (carrying) and waiter (carrying heavy trays). The cardiac arrythmia noted during one hospital admission in July 1981, Record at 135, was determined to be "probably of gastric origin" and is therefore not considered an individual ailment.

the ALJ correctly stated that plaintiff's physician reported that plaintiff's chronic abdominal pain was not activity-related, Record at 135, the ALJ's conclusion that this meant plaintiff could resume past employment is illogical. The fact that plaintiff did work in the past during periods of intense pain should not militate against him as the ALJ's evaluation suggests, but instead should be viewed in favor of his argument.[5]

Acknowledging that the ALJ was able to observe plaintiff's demeanor, and the Court was not, there is recognized value of plaintiff's subjective testimony. "Evidence of subjective pain is relevant and probative to the law judge's ultimate determination of disability ... and failure to consider it is ground for remand." *Diabo v. Secretary of Health, Education and Welfare,* 627 F.2d 278, 282 (D.C.Cir.1980).

■ Here, while the ALJ did describe and consider some of the plaintiff's complaints of continual, disabling pain, he concluded, surprisingly, in light of the overwhelming evidence, that Davis' complaints were "not credible". Those conclusions he based on his evaluation of the evidence:

> ... Claimant's testimony as to his inability to work and his inability to fulfill the exertional requirements of his prior work is not credible in light of the infrequent and episodic nature of acute pain, the relief that medication brings, and the evidence that claimant maintains full range of motion in all extremities. The undersigned observed that claimant did not exhibit any sign of physical limitation that would be consistent with his subjective complaints of constant disabling pain. More important, while claimant's condition causes some abdominal discomfort and episodes of acute pain, medical evidence fails to establish the existence of a medically determinable impairment that causes him continual pain that precludes him from engaging in his past work. Reports have shown that claimant's discomfort is not related to exertion. This is further demonstrated by claimant's ability to continue working after being treated for an episode of acute pain.

Record at 11–12.

Yet here, Davis' testimony as to continual, unrelenting, persistent, unbearable pain does not stand alone. It is corroborated, substantially and convincingly, throughout the record (which includes reports of all physicians, various diagnostic reports and past hospitalizations). Similarly, plaintiff's testimony that he could not return to any work, including, specifically, his past occupations, was supported by his physician who requested Davis be retired on the basis of disability, Record at 115, and noted that he was "unable to return to work due to persistent abdominal pain", Record at 142. In the evaluation of this record the ALJ rejected all this evidence when he summarily dismissed Davis' pronouncements of pain over many years as "discomfort", "infrequent", "episodes", "acute". As in *Wander,* 523 F.Supp. at 1094–95, the ALJ "erred in effectively disregarding all of the plaintiff's uncontroverted evidence" concerning Davis' pain and its continuing and disabling impact on him and his ability to work at his past employments.

Accordingly, the ALJ's decision, erroneously premised on the above findings, produced the similarly invalid conclusion that plaintiff could perform his past occupations.[6] Therefore, his disability benefits

---

5. The ALJ properly noted that plaintiff was described at one time as a noncompliant patient, although the record reveals that he has since refrained from drinking, Record at 138. Noteworthy, however, is the fact that although the diabetes has been controlled with insulin, physician reports indicate that other medication such as Dilaudid, "a hydrogenated ketone of morphine," *Physicians' Desk Reference,* 1039 (1983), prescribed to relieve abdominal pain, has provided little relief to plaintiff's "unbearable" pain.

6. In his *Summary and Evaluation,* the ALJ indicated that plaintiff was able to perform work as a porter or waiter. However, in his *Findings,* the ALJ concluded that plaintiff could resume work as a porter or custodian. Given this inconsistency, it is difficult to determine whether the ALJ found plaintiff qualified for two or three past positions. Regardless, there

were denied. This opinion, determined in the absence of substantial evidence, must be reversed.

■ The matter cannot end here however, since there must be a remand to determine if Davis retains the capacity to engage in any other substantial gainful activity. First, the Secretary must assess Davis' present job qualifications and second, fortified with sufficient knowledge of Davis' abilities and limitations, she must consider the existence of suitable jobs in the national economy which Davis, with his qualifications, could perform. *Heckler v. Campbell,* —— U.S. ——, ——, 103 S.Ct. 1952, 1956, 76 L.Ed.2d 66 (1983); *Diabo v. Secretary,* 627 F.2d at 283 (D.C.Cir.1980).

Upon remand, another administrative hearing must be held at which time evidence presently in the record will be reevaluated and, as warranted, additional evidence presented and considered. Medical-vocational guidelines will be applied in determining whether plaintiff is able to perform any other substantial gainful activity.

In view of the foregoing, it is by the Court this 24th day of June 1983,

ORDERED, that this cause shall be and hereby is remanded to the defendant for reevaluation and further evidence, as appropriate, not inconsistent with this Memorandum Opinion and Order; and it is

FURTHER ORDERED, that plaintiff's motion for judgment to reverse the Administration's decision denying plaintiff's claim for an award of disability benefits, and defendant's motion for affirmance of the Secretary's decision, be and they hereby are denied in view of the Court's remand of this matter to defendant.

is unrefuted documentation and testimony that plaintiff could not perform any of these occupations. Reports of the July 1981 hospitalization expressed that plaintiff "experienced chronic abdominal pain for the past several months which had 'its ups and downs' ", that "Tylenol and even Codeine, and Dilaudid did nothing to control his abdominal pain", that he had "persistent pain" uncontrolled by Demerol, that he continued to receive Dilaudid but it gave Davis "little relief of pain which was unbearable".

Record at 135. Davis testified that because of his constant pain and all his impairments he could not perform work as a porter where he mopped floors three hours daily, bent, lifted, stooped and placed grocery parcels in customer's cars, or as a custodian, with similar activity. He could not work as a waiter because unable to lift or carry heavy trays up and down several flights of stairs ten to fifteen times daily.