**Mary COWAN, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

Civ. A. No. 86–830 SSH.

United States District Court, District of Columbia.

July 10, 1987.

Michael D. Steinhardt, Blen Burnie, Md., Samuel Williamowsky, Rockville, Md., for plaintiff.

Daniel Bensing, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

This action is brought pursuant to 42 U.S.C. § 405(g), under which an individual seeking disability benefits under the Social Security Act may seek judicial review of a final decision denying or terminating such benefits.[1] The plaintiff was denied disability benefits on January 28, 1986. She now moves for summary reversal of that deci-

---

1. In addition to challenging the Secretary's decision under 28 U.S.C. § 405(g), plaintiff's complaint alleges denial of due process and viola- tion of the Administrative Procedure Act, 5 U.S.C. §§ 551–59, 701–06.

sion, and the Secretary of Health and Human Services (the Secretary) moves for summary affirmance. Upon consideration of the motions, defendant's opposition pleading, and the entire record of the proceedings before the agency, the Court concludes that the Secretary's decision should be affirmed.

## Background

### A. Applicable Law

The relevant legal doctrine is well-established. In seeking disability benefits under 42 U.S.C. § 423, Cowan, the claimant, bears the initial burden of showing, by a preponderance of the evidence, that she is "disabled," such that she is incapable of performing her prior work. *Martonik v. Heckler,* 773 F.2d 236, 239 (8th Cir.1985); *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981), *see* 42 U.S.C. § 423(a)(1)(D). In making this determination, four types of information are relevant: (1) objective medical data and findings; (2) expert opinions of treating and examining physicians; (3) subjective complaints of pain; and (4) the individual's age, education, and work history. *Owens v. Heckler,* 770 F.2d 1276, 1279 (5th Cir.1985); *Davis v. Heckler,* 566 F.Supp. 1193, 1196 (D.D.C.1983); *see* 42 U.S.C. § 423(d). Additionally, Cowan must demonstrate that she became disabled during the time period, as determined under 42 U.S.C. § 423(c)(1), in which her earnings history conferred "insured status." *Owens,* 770 F.2d at 1280; *Garner v. Heckler,* 745 F.2d 383, 390 (6th Cir.1984); *see* 42 U.S.C. § 423(a)(1)(A).

If Cowan meets her burden of persuasion, the burden shifts to the Secretary to demonstrate that despite her inability to perform her previous job, Cowan's "residual functional capacity" enables her to perform other substantial, gainful activity. *Martonik,* 773 F.2d at 239–40; *Hall,* 658 F.2d at 264–65. At the administrative level, this determination is made by referring to general rules and tables, known as "grids," which allow the Administrative Law Judge (ALJ) to interrelate the claimant's functional capacity, age, educational and work experience, and conditions in the national job market. *Hall,* 658 F.2d at 265; *see* 20 C.F.R. §§ 404.1504–13 & App. 2.

In reviewing the Secretary's decision, the Court may not reverse if the Secretary's findings are supported by "substantial evidence." 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Accordingly, the Court does not engage in *de novo* review of the facts, and does not substitute its judgment concerning the weight and validity of the evidence for the Secretary's. *Reading v. Mathews,* 542 F.2d 993, 997 (7th Cir.1976); *Davis,* 566 F.Supp. at 1195.

### B. The Administrative Record

The plaintiff, Mary Cowan, was born on November 19, 1926, (R. 56) and completed 11th grade before leaving school (R. 23). From 1959 to 1977, Cowan worked as a coffee maker for a caterer (R. 23–24). After that, from April to October of 1979, Cowan worked as a cashier in the cafeteria for a Navy research center. In addition to her duties as a cashier, she was responsible for meat slicing, and salad, sandwich, and coffee preparation (R. 23–27). She has not worked since October 1979 (R. 28).

Cowan's medical difficulties of record began in 1978, when she visited Dr. Jeffrey D. Sabloff, an orthopedic surgeon, for treatment of a sore left shoulder (R. 97). X-rays revealed a calcium deposit in the biceps tendon (R. 97). Dr. Sabloff placed the arm in a sling, and prescribed medication and heat treatments (R. 97). By July of 1978, Cowan was asymptomatic with "excellent motion of her shoulder," and she was off all medication (R. 97). Residual pain in the shoulder was noted in office visits during August and September of 1978, but is not mentioned after September 27, 1978 (R. 100–01). In September of 1978, Cowan began to notice pain in her left knee, which Dr. Sabloff diagnosed as degenerative arthritis (R. 101). He prescribed anti-inflammatory medication and

heat, and injected the knee with Xylocaine and Depo Medrol (R. 101).

According to Dr. Sabloff's notes, Cowan "was well until August 22 [1979,] when she hit her leg against a electrical outlet at work." (R. 102.) Apparently, while Cowan operated the cash register at her cafeteria job, her ankle repeatedly struck a protruding floor outlet near the cash register (R. 27–28). When Dr. Sabloff examined her on March 10, 1980, he discovered some discoloration in her calf, and X-rays revealed degenerative arthritis in her ankle and evidence of what could have been an old fracture (R. 102). He noted that Cowan had full range of motion in the ankle, but experienced pain when flexing and extending the ankle (R. 102). Dr. Sabloff placed the ankle in a soft cast and prescribed medication (R. 102).

In May of 1980, Dr. Sabloff reported that the ankle had improved, and he removed the cast (R. 105). He noted minimal swelling and "a good, gentle" range of motion (R. 105). Dr. Sabloff prescribed physical therapy and anti-inflammatory medication (R. 105). The ankle made excellent progress between May and August 1980 (R. 106–07). Aside from occasional pain in her ankle and knee, Dr. Sabloff pronounced Cowan "essentially asymptomatic" and discharged her from active care on August 21, 1980 (R. 108). His notes indicate that Cowan was going back to work (R. 108).

In October 1980, Cowan returned to Dr. Sabloff complaining of intermittent pain in the ankle (R. 109). X-rays revealed further degenerative changes in the ankle and contact between the two bones in the ankle, which Dr. Sabloff identified as the source of the pain (R. 109). He resumed anti-inflammatory medication, and directed Cowan to resume wearing her ankle brace (R. 109). He also informed Cowan that it was important that she lose weight to relieve pressure on her ankle (R. 109). The ankle improved during November and December of 1980, and on December 9, 1980 (R. 110–11), Dr. Sabloff reported that Cowan was "doing well with minimal discomfort intermittently." (R. 111.) He also noted that palpation and gentle range of motion cause

no pain, and that Cowan was "doing all her regular activities." (R. 111.) The anti-inflammatory medication was continued, and Cowan was directed to continue using her ankle strap and heat treatments (R. 111).

On February 19, 1981, Dr. Sabloff pronounced Cowan "asymptomatic essentially. * * * She cannot do anything strenuous as [her ankle] starts to hurt her, but her regular activities she has been doing okay." (R. 117.) He noted that her range of motion was almost normal and that palpation caused minimal pain (R. 117). In discharging Cowan from active care, Dr. Sabloff concluded: "She is disabled in that she cannot be on her feet full time in a working capacity. Otherwise, she is able to do her regular activities with rest periods." (R. 117).

On July 16, 1981, Cowan returned to Dr. Sabloff reporting continued pain and swelling in the ankle (R. 118). X-rays revealed additional evidence of arthritis (R. 118). Dr. Sabloff concluded that Cowan would continue to have problems with the ankle: "She has a 30% permanent/partial disability." (R. 118.) She also stated that Cowan was "not a candidate to stand or to having [*sic*] heavy working activities or to work full time on her feet." (R. 118.) Cowan also reported pain in her knee and hip, which Dr. Sabloff believed was related to her ankle problem (R. 118). He prescribed medication and scheduled another appointment for three weeks later (R. 118).

On August 9, 1981, Dr. Sabloff reported general improvement (R. 119). He noted that Cowan had flexion of her back to 80 degrees with pain, extension to 30 degrees, and normal rotation (R. 119). He prescribed low back exercises (R. 119). On August 27, 1981, Dr. Sabloff reported that Cowan was "doing much better," and that although there was still intermittent pain, Cowan's "ankle, knee and hip [were] feeling okay." (R. 120.) He expressed his intention to take her off medication and indicated that he did not see a need for additional visits (R. 120). Dr. Sabloff also concluded that Cowan was "free to to [*sic*] some type of work that does not involve

heavy labor. * * * Again, Mary is able to do cashier job." (R. 120.)

However, in October of 1981, Cowan began to experience additional pain in her knee and ankle. Physical therapy and medication brought about limited improvement (R. 121–24). On December 28, 1981, Dr. Sabloff reported that Cowan was "obviously not a candidate to work on her feet for 6–8 hours. . . . She is a candidate for some sedentary work. . . . She is not going to be able to do regular standing at work, now or ever." (R. 125.)

Over the next three years, Cowan continued to experience peaks and valleys with respect to pain in her ankle, knee, back, and hip, while her overall condition deteriorated (R. 126–46, 162–66). In September of 1982, Dr. Sabloff expressed doubt that Cowan would be able to return to her regular activities (R. 127). However, in January of 1984, Dr. Sabloff reported that Cowan could handle "a sedentary type of occupation where she can sit and get up intermittently. I don't think she is every [sic] going to be able to do a job where she has to stand full time for eight hours a day. If something could be found in line with those restrictions she would have no problems going back to work." (R. 140.)

Cowan applied for disability benefits on December 12, 1984, citing high blood pressure, fluid, arthritis, nervousness, and problems with her right foot, knee, hip, and lower back, as her disabling condition (R. 56). On January 16, 1985, her request for benefits was denied (R. 60–66). Cowan requested reconsideration on January 30, 1985 (R. 67), and on March 30, 1985, her application was again denied (R. 68–74). Cowan requested a hearing before an ALJ. (R. 75.)

Cowan's hearing was held on July 2, 1985, at which time the ALJ heard Cowan's testimony and allowed into evidence all documentation offered by her attorney (R. 19–22). On August 12, 1985, the ALJ issued a decision denying Cowan's request for benefits (R. 8–13). Initially, the ALJ found that on the basis of her earnings record, Cowan's eligibility for disability benefits had expired on September 30, 1981 (R. 11). The

ALJ further found that while Cowan had experienced pain in her ankle, hip, knee, and lower back prior to September 30, 1981, the record as a whole "failed to demonstrate the presence of any impairment which would have precluded [Cowan] from performing her past relevant work as a cafeteria cashier at any time on or before September 30, 1981." (R. 12.) Specifically, the ALJ noted that Dr. Sabloff's reports revealed no significant limitation in range of motion in any of the affected areas, that Cowan's degenerative changes were never deemed severe, and that Cowan's motor, sensory, and reflex activities were not significantly abnormal (R. 12). The ALJ also noted that Dr. Sabloff's reports dated prior to September 30, 1981, proscribed only heavy physical labor, and that Dr. Sabloff's most recent assessment rated Cowan's condition at only a 10 percent partial permanent disability to both the ankle and back (R. 12).

On October 7, 1985, Cowan requested that the Appeals Council of the Social Security Administration review the decision of the ALJ (R. 7). Cowan also supplied an additional, undated report from Dr. Sabloff and a Vocational Potential Report from Martin Kranitz, M.A., dated August 20, 1985 (R. 6). On January 28, 1986, after considering Cowan's additional evidence, the Appeals Council declined to review the ALJ's decision, finding that Cowan had provided nothing to affect the basis for the earlier decision (R. 4–5). Specifically, the Appeals Council found that the vocational evaluation provided no evidence relating to whether Cowan was disabled on September 30, 1981, and that Dr. Sabloff's report provided no new objective medical findings (R. 5). Accordingly, the Appeals Council adopted the ALJ's decision as the final decision of the Secretary (R. 4). Having exhausted her administrative appeals, Cowan commenced this suit.

### Discussion

It is important to note at the outset, as did both the ALJ and the Appeals Council, that September 30, 1981, provides the operative date in determining whether plaintiff

is "disabled." Although counsel for plaintiff conceded this at the hearing before the ALJ (R. 21–22), in his motion seeking to reverse the Secretary's decision, he points to no evidence in the record which undermines the determination that, as of that date, Cowan was not incapable of performing the functions of her prior position.

The Secretary's assessment of Cowan's status on the date her eligibility expired has ample support in the record. Dr. Sabloff's reports from February and July of 1981 indicate that Cowan's condition precluded only those sorts of jobs that involved heavy labor or required her to "be on her feet full time in a working capacity." (R. 117; *see also* R. 118.) More importantly, on August 27, 1981, at Cowan's last visit during her eligibility period, Dr. Sabloff found her condition "much better" and pronounced her fit for "some type of work that does not involve heavy labor." (R. 120.) Moreover, he expressly found her fit to return to the cashier job that she held prior to her ankle injury, if such a position was available (R. 120). These assessments are consistent with the objective medical evidence, as the Secretary so found. That Cowan's condition may have worsened between the date that her eligibility for benefits ended and the date that she applied for benefits is not relevant to the disability determination. *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir.1986); *Owens,* 770 F.2d at 1280; *Dunlap v. Harris,* 649 F.2d 637, 639 (8th Cir.1981); *Reading,* 542 F.2d at 997.

Plaintiff's sole challenge to the Secretary's denial of benefits rests on the ALJ's decision not to request a vocational evaluation. The argument fails on several grounds. First, such an evaluation—designed to identify what jobs, if any, could be performed by a claimant unable to perform his or her previous work—is wholly unnecessary when, as here, the ALJ determines that the claimant was capable of returning to her previous job. Second,

even if the ALJ had determined that Cowan was unable to perform her previous work, use of a vocational expert remains within the discretion of the ALJ. *See* 20 C.F.R. § 404.1566(e). Plaintiff's "Vocational Potential Report," prepared for and considered by the Appeals Council, amply demonstrates the minimal usefulness of such a report in a case like this. While the report includes findings applicable to Cowan's ability, as of August 20, 1985, to engage in gainful activity, the report provides nothing relevant to assessing Cowan's skills on September 30, 1981. In the absence of such information, the report is of no use. *Parsons v. Heckler,* 739 F.2d 1334, 1340 (8th Cir.1984). Thus, the Court finds no error in the ALJ's decision not to request a vocational evaluation.[2]

### Conclusion

The Court finds substantial evidence in the record to support the Secretary's determination that, as of September 30, 1981, the plaintiff was capable of performing the duties of her previous position, and therefore not disabled within the meaning of 42 U.S.C. § 423. Consequently, the Court grants the Secretary's motion for affirmance, and denies the plaintiff's motion for reversal. For the reasons stated in this Memorandum Opinion, the Court finds no merit in any of the claims raised in the complaint. Accordingly, the complaint is dismissed with prejudice.

---

**2.** The Court, therefore, rejects plaintiff's claims of due process and Administrative Procedure Act violations. Cowan's attorney was afforded every opportunity to present evidence and testimony supporting her request for benefits. As discussed herein, the Court finds that the Secretary considered all relevant evidence, and reached a reasonable decision.