Linda M. LOCKARD, Plaintiff,

v.

Kenneth S. APFEL, Defendant.

No. CIV.A. 00–1752HHKJMF.

United States District Court,
District of Columbia.

Dec. 3, 2001.

Fred E. Haynes, U.S. Attorney's Office, Washington, DC, R. Scott McNeilly, Washington Legal Clinic for the Homeless, Washington, DC, for plaintiff.

Fred E. Haynes, U.S. Attorney's Office, Washington, DC, for federal defendants.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This matter has been referred to me by Judge Kennedy for all purposes. Plaintiff brings this claim for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. A. §§ 401–423, 1381–1383(1991).

## BACKGROUND

Plaintiff, Linda M. Lockard ("Lockard"), is a 47–year–old woman with a high school education and past relevant work experience as a dental clerk and secretary. At some point in 1991, plaintiff suffered two strokes, which resulted in pain and spasms in her right hand. After the strokes, plaintiff continued to work for a time, receiving assistance from her co-workers for various tasks. In 1996, she resigned from her job, and on July 9, 1996, she filed an application for DIB and SSI. Dr. John Lossing ("Dr.Lossing") examined Lockhard at the SSA's request in October 1996 and rated the grip strength in her right hand as one fifth of normal and described the right hand as "useless" and "spastic." *Transcript of Administrative Record* (Tr.) at 148. By all accounts, since the strokes, her right hand has remained clenched in a fist most of the time. Dr. Lossing's report also noted that plaintiff was otherwise mobile and could walk 12 blocks and stand for two hours. Plaintiff's application was denied initially and upon reconsideration. Plaintiff then requested and was granted a hearing by an Administrative Law Judge ("ALJ"). Before the hearing, plaintiff was seen by Dr. Laura Isensee in May 1997, and in addition to her right-hand impairment, complained of headaches and balance problems. At the hearing on June 19, 1997, plaintiff explained her right-hand impairment, as well as migraine headaches that occurred two or three times per week and brought on blurred vision and a lack of concentration. Plaintiff also complained of more recent problems with maintaining her balance while walking. Tr. at 92. The ALJ denied Lockard's claim on June 26, 1997. Plaintiff appealed the ALJ decision, and on September 24, 1998, the Appeals Council vacated the ALJ's decision and remanded for further evaluation and a new hearing.

The Appeals Council provided the following specific commands to the ALJ on remand:

> Evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 404–1529 and 416. 929) and Social Security Ruling 96–7p.

> If necessary, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's past relevant work and/or other work within the remaining occupational base (SSR 85–15). Any hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). If it is found that the claimant has the residual functional capacity for her past relevant work, the decision will contain findings of fact on this issue as directed by SSR 82–62.

Tr. at 174.

Meanwhile, in October 1997, plaintiff began seeing Dr. Carla Richardson ("Dr.Richardson"), who treated her for

headaches, hives, anxiety, and stress. On January 2, 1999, Dr. Richardson produced a report stating that plaintiff's right hand is "virtually useless for manual labor or any duties requiring manual dexterity of both hands." Tr. at 42. The report also discussed plaintiff's migraine headaches, depression, and anxiety. Dr. Richardson's files from 1998 indicate that plaintiff also suffered crying spells, loss of appetite, hives, and insomnia.

Dr. Richardson concluded that migraines, said to be episodic, occurring every two to three weeks, "if not adequately controlled will require intermittent absences and inability to perform duties." Tr. at 38.

The new hearing was held on January 7, 1999. Dr. Richardson's report and plaintiff's testimony at the hearing detailed plaintiff's recurring migraine headaches, which blur her vision and cause her to become dizzy and lose her balance. Plaintiff also noted that medication had lessened the severity of her migraine attacks. Tr. at 68. Plaintiff complained of callouses on her feet, and the record indicates that she had been regularly treated by a podiatrist since 1994. Tr. at 46–49. Although she did not diagnose or discuss these foot problems in her report, Dr. Richardson did indicate that plaintiff could stand or walk for only two hours out of an eight hour workday. Tr. at 40. Finally, at the hearing plaintiff spoke of her depression, anxiety, hives, and insomnia. Tr. at 67–72. On February 5, 1999, the ALJ again denied plaintiff's claim. Plaintiff once more appealed, and on April 25, 2000, the Appeal's Council declined to review the ALJ's decision. The ALJ's February 5, 1999 decision stands as the SSA's final decision, which plaintiff now seeks to have reversed.

## DISCUSSION

The Social Security Act provides that a district court may reverse or remand a final decision of the Commissioner if it is not supported by substantial evidence or it is not made in accordance with applicable law and regulations. 42 U.S.C.A. §§ 405(g) and 1383(c)(3)(1991). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Simms v. Sullivan*, 877 F.2d 1047 (D.C.Cir.1989); *Davis v. Shalala*, 862 F.Supp. 1 (D.D.C. 1994). The substantial evidence standard entails a degree of deference to the Commissioner's decision. *Davis v. Heckler*, 566 F.Supp. 1193, 1195 (D.D.C.1983). The standard is perhaps best described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420 (quoting *Consolidated Edison, Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Additionally, many cases in this Circuit have applied a liberal construction of the Social Security Act in favor of disability, given the remedial purposes of the Act. *Davis v. Shalala*, 862 F.Supp. at 4; *Taylor v. Heckler*, 595 F.Supp. 489, 493 (D.D.C.1984); *Champion v. Califano*, 440 F.Supp. 1014, 1018 (D.D.C.1977).

A disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.A. § 423(d)(1)(A)(1991). Furthermore, an individual

shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other line of sub-

stantial gainful work which exists in the national economy."

42 U.S.C. A. §§ 423(d)(2)(A) and 1382c(a)(3)(B)(1991).

The Secretary has enacted regulations that establish a five-step sequential test for determining whether a claimant is disabled. 20 C.F.R.[1] §§ 404.1520, 416.920. First, the claimant must not have engaged in "substantial gainful activity" since the onset of the impairment. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he has a "severe impairment," one that "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, the impairment must be listed in Appendix 1 or be substantially equivalent to these listed impairments. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, the claimant must be incapable of performing work he has done in the past. 20 C.F.R. §§ 404.1520(e), 416.920(e). If incapable of past work, as the ALJ found here, then the Commissioner must determine the claimant's "residual functional capacity" ("RFC") to see if he can perform other work that exists in substantial numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 416.920(f). Importantly, the Commissioner bears the burden of showing that the claimant is capable of performing other work. 20 C.F.R. §§ 404.1520(f), 416,920(f); *Brown v. Bowen,* 794 F.2d 703, 705 (D.C.Cir.1986); *Davis v. Shalala,* 862 F.Supp. at 4.

■ As noted above, the Appeals Council imposed on the ALJ the specific responsibility to "obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's past relevant work and/or other work within the remaining occupational base (SSR 85–15). Any hypothetical questions should re-

flect the specific capacity/limitations established by the record as a whole." Tr. at 174.

The requirement imposed by the Appeals Council mirrors the requirement imposed universally by the courts that the hypothetical question addressed to the vocational expert "encompass all relevant impairments." *Diabo v. Secretary of Health, Education and Welfare,* 627 F.2d 278, 283 (D.C.Cir.1980); *Hunt v. Massanari,* 250 F.3d 622, 624 (8th Cir.2001); *Buxton v. Halter,* 246 F.3d 762, 771 (6th Cir. 2001)("[T]he hypothetical question(s) posed to the VE must accurately represent the claimant."); *Vega v. Commissioner,* 265 F.3d 1214, 1219 (11th Cir.2001); *Buxton v. Halter,* 246 F.3d 762, 771 (6th Cir.2001); *Lauer v. Apfel,* 245 F.3d 700, 705 (8th Cir.2001); *Howard v. Massanari,* 255 F.3d 577, 581 (8th Cir.2001).

Despite this clear guidance, the posing of the hypotheticals in this case created an awful muddle.

First, the ALJ did not bring the vocational expert's attention to Dr. Richardson's report nor did he paraphrase the testimony plaintiff had given concerning her headaches, foot problems, inability to stand, anxiety, and depression. Instead he referred the vocational expert to the three year old report completed on October 23, 1996 by Dr. John Lossing, a neurologist. Dr. Lossing reported that plaintiff's right hand was "useless ... spastic." Tr. at 148. He also reported that plaintiff could "get on and off the exam table easily. The patient could walk on heels, toes and tandem walk." *Id.* The ALJ then said to the vocational expert:

Assume that a hypothetical person who has the same age, education and work experience as the claimant and who has factors defined in residual physical ca-

---

1. All references to the Code of Federal Regulations ("C.F.R.") are to the 2001 edition.

pacity assessment present exhibit 16 [i.e. Lossing's report]. Can you identify any jobs that such a hypothetical person can perform on a sustained basis and which jobs exist in significant numbers in the national economy?

Tr. at 76.

The vocational expert responded that there was light duty, unskilled work that such a person could perform such as officer helper, apparel stock checker, automobile self-service station attendant, and gate guard. Tr. at 76–77.

On cross examination, however, the vocational expert conceded that, if these jobs demanded more than two hours per day of standing and walking, the hypothetical person could not perform them. Tr. at 78. He then conceded that the apparel job would require the ability to use both hands and a total lack of bi-manual dexterity would preclude that kind of work. Tr. at 78–79.

Counsel for the claimant then posed the following hypothetical:

> If you could assume age, education and work experience as in the hypothetical posed by the Administrative Law Judge Bond, but instead this is an individual who can lift only up to a maximum of 20 pounds occasionally, can only stand and walk for a maximum of two hours out of an eight-hour day, and in addition, this hypothetical individual is unable to grasp, hold or perform any duties requiring significant manual dexterity of both hands—

Tr. at 80.

At this point the ALJ interrupted to correct counsel because the plaintiff only lacked manual dexterity in her right hand. Accepting that correction, counsel inquired whether there were any jobs that this hypothetical person could perform. The vocational expert asked counsel to explain

what the limitations were and counsel responded:

> As described by her treating physician, Ms. Lockard's right hand has been so affected by her two previous CVA's as to render it virtually useless for manual labor, or any duties requiring significant manual dexterity of both hands.

Tr. at 80.

The vocational expert responded:

> I think that would, it would essentially eliminate work

*Id.*

Counsel then asked:

> So needless to say, a loss of productivity resulting from depression, anxiety, migraine headaches, clearly there wouldn't be any other jobs that would exist if that hypothetical individual was precluded from work.

*Id.*

The vocational expert agreed. Tr. at 81. Counsel for plaintiff then concluded the hearing by stating:

> I will stand on my written submission, but I will just highlight that based on residual functional capacity as assessed by Ms. Lockard's treating physician, the Vocational Expert testified that that hypothetical individual would not be capable of performing work which exists in the national economy in significant numbers. Therefore, Ms. Lockard would be entitled to a finding of disability.

Tr. at 81.

Counsel's summary of the testimony of the vocational expert was unquestionably correct. Wherever the vocational expert started his testimony, he concluded by testifying unequivocally that consideration of plaintiff's inabilities to use her right hand, lift more than 20 pounds, and stand for only two of the eight hours of a working day rendered her disabled, i.e., "would

eliminate work." Tr. at 80. He gave that opinion before he even considered her neurological and psychiatric symptoms (migraine headaches, depression, and anxiety). Remarkably, in the teeth of that testimony, the ALJ concluded that plaintiff was not disabled. This conclusion, which is contradicted by the only evidence tendered as to the vocational consequences of plaintiff's inability to use both hands, lift more than 20 pounds, and stand for more than two hours, cannot to be based on substantial evidence viewing the record as a whole. It is impossible, after all, to conclude, as the ALJ did, that "based on the testimony of the vocational expert" (Tr. at 29) plaintiff was capable of making a successful transition to the jobs the vocational expert described when that same expert testified she was not.

■ Case law in this Circuit affords great weight to a treating physician's assessment. *Williams v. Shalala*, 997 F.2d 1494, 1498 (D.C.Cir.1993) ("The treating physician's opinion regarding an impairment is usually 'binding on the fact-finder unless contradicted by substantial evidence.'") (citing *Murdaugh v. Secretary, Dep't of Health & Human Services*, 837 F.2d 99, 101 (2nd Cir.1988)). Furthermore, "an ALJ who rejects the opinion of a treating physician must explain his reasons for doing so." *Williams*, 997 F.2d at 1498. In this case, however, the ALJ referred the vocational expert to a three-year-old assessment by a physician who apparently was not made aware of or asked to assess the significance of plaintiff's neurological and psychiatric symptoms. His failure to integrate Dr. Richardson's diagnoses, determinations, and prescribed medications into the hypothetical he posed was fundamental error. If the ALJ had the obligations to pose a hypothetical that accurately represents the claimant's physical and mental conditions and to accept the

uncontradicted treating physician's diagnosis, then it must follow that his hypothetical question to the vocational expert present a faithful summary of the treating physician's diagnosis unless the ALJ provides good reason to disregard that physician's conclusions. Instead, the ALJ in this case, without explanation, disregarded the treating physician's assessment of plaintiff's neurological and psychiatric symptoms in favor of a three-year-old assessment that did not even consider those additional impairments.

■ Finally, while an ALJ has every right to consider the credibility of plaintiff's testimony, it appears that here the ALJ distorted evidence to support a finding that plaintiff was capable of performing work. The ALJ pointed to plaintiff's ability to clean up around the house, shopping and her socializing with friends as further evidence of her ability to work. Tr. at 27. Upon closer look, plaintiff's testimony supports the opposite conclusion. She indicated that her thirteen-year-old son had taken over most of the cleaning chores. Tr. at 74. Her social life amounted to a handful of visits to her sister and nearby neighbors over the course of one year. Tr. at 74. When she shops, the store has a ride along program and store employees help her carry the bags. Plaintiff's barely performing the minimal functions of living does not make her able to perform gainful work.

## CONCLUSION

■ The ALJ's final conclusion in this case is irrationally at odds with the only evidence presented to him by the vocational expert, that plaintiff could not work. His cavalier disregard of the treating physician's diagnosis in the hypothetical he posed and in his overall analysis of the evidence also demands reversal of the ALJ's conclusion. Although reversal in-

stead of remand is more common in disability benefits appeals, conditions supporting a reversal are present here. Plaintiff first filed for disability benefits in July 1996 and, thanks to a second reversal of the ALJ's decision, has been entangled in the disability system for at least five years. While a lengthy application process by itself is not enough to warrant the court's awarding benefits, it is a valid consideration. In addition, the administrative record has been fully developed and new facts would not be explored on remand. The institutional concern of deferring to the expertise of the administrative agency is not present. Assessing the significance of evidence in a judicial or quasi-judicial proceeding is a judicial function requiring no expertise this court lacks. Finally, if the ALJ properly accepts the vocational expert's response to counsel's accurate description of plaintiff's impairments, it would be virtually impossible for him to find against plaintiff upon remand. In similar cases, courts have often found that a remand should not further delay the award of benefits. *See Gilliland v. Heckler,* 786 F.2d 178, 185 (3rd Cir.1986) (ordering a direct reversal for cases in which substantial evidence indicates that plaintiff is disabled); *See also Martin v. Apfel,* 118 F.Supp.2d 9, 18 (D.D.C.2000); *Robinson v. Heckler,* 593 F.Supp. 737 (D.D.C.1984); *Tennant v. Schweiker,* 682 F.2d 707, 710 (8th Cir.1982); *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir.1981). I therefore conclude that plaintiff's motion for reversal of the final decision of the Commissioner's decision should be granted and that Lockard be awarded disability benefits to commence immediately.