William DAVIS, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health
and Human Services, Defendant.

Civ. No. 94–0687 (CRR).

United States District Court,
District of Columbia.

Aug. 30, 1994.

Teresa M. Gillis, Neighborhood Legal Services Program, Washington, DC, for plaintiff.

Eric H. Holder, Jr., U.S. Atty., together with John D. Bates and Claire Whitaker, Asst. U.S. Attys., for defendant.

### MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Dispositive Motions are before the Court in the above-captioned case on behalf of both the Plaintiff and the Defendant with regard to the Defendant's denial of the Plaintiff's request for Social Security Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act. Upon consideration of the parties' submissions, the applicable law, careful scrutiny of the record as a whole, and for reasons discussed herein, the Court finds that the Secretary's decision must be Remanded. Having examined the record, the Court is unable to conclude that the Secretary's decision is supported by substantial evidence, as the Administrative Law Judge ("ALJ") has failed in his written decision to explain sufficiently the weight he has given to certain probative items of evidence. In particular, he has failed to give adequate consideration to the evidence supporting Plaintiff's claim that his impairment, or combination of impairments, meets Listing 1.12 of the controlling regulations for the requisite time period. Moreover, in finding that the Plaintiff can perform the full range of light work, the Defendant has not adequately examined probative evidence concerning Mr. Davis' exertional limitations, nor has he given proper consideration to the subjective evidence of non-exertional impairments which, in turn, could require the ALJ to introduce vocational evidence to determine whether a significant number of jobs exist in the national economy that the Plaintiff may perform.

### BACKGROUND

The Plaintiff is a 52–year–old man with a 12th grade education. He has a vocational background as a swimming pool manager and lifeguard, carpenter, cement mason, and rehabilitation counselor. The Plaintiff's swimming pool positions required him to sit for long periods, occasionally bend and reach, and lift and carry up to 50 pounds. The Plaintiff's construction positions required him to stand and walk for long periods, constantly bend and reach, and lift and carry 50–100 pounds. The Plaintiff's counselor position required sitting for prolonged periods, occasional bending, reaching, and lifting little, if any, weight (R. 113–18).[1] At present, the Plaintiff is unemployed.

The Plaintiff alleges that he is unable to work because he suffers disabilities in his right elbow and left ankle. On October 7,

---

1. "R" followed by the page number, refers to the court transcript of the entire record of the proceedings relating to this case.

1982, the Plaintiff was struck by an automobile. As a result of the accident, the Plaintiff sustained severe fractures to his right elbow and left ankle (R. 170).

Regarding the Plaintiff's ankle condition, the Plaintiff reports that he suffers severe pain, secondary to traumatic arthritis, and that he occasionally wears a left ankle brace (R. 220). Regarding his right elbow condition, the Plaintiff underwent two surgical procedures, somewhat improving his condition. However, the Plaintiff reports that he has problems with numbness and lack of feeling in his fingers, causing him sometimes to drop things (R. 216–17). As a result of these conditions, the Plaintiff claims that he has been unable to work since September 15, 1991, when he was employed as a seasonal pool manager (R. 74).

On April 15, 1992, the Plaintiff underwent an orthopedic consultative examination by Dr. Willie E. Thompson. Dr. Thompson noted that the Plaintiff has a limited range of motion in his right elbow, causing a 15% degree of permanent/partial impairment and loss of physical function to his right upper extremity. Additionally, the Plaintiff's X-rays revealed early degenerative arthritis in his left ankle. Based on these X-rays, Dr. Thompson found that surgical intervention may be necessary in the future. Dr. Thompson opined that the Plaintiff's physical work should be moderately restricted, that is, the Plaintiff should refrain from standing and walking for more than ⅓ of a work day, should not engage in climbing, and should not lift more than 20 pounds (R. 170–73).

In September, 1992, the Plaintiff allegedly re-injured his right elbow and left ankle in a fall (R. 184–88, 191–94). On March 18, 1993, the Plaintiff underwent a rheumatology consultative evaluation by Dr. Oliver J. Lawless. Dr. Lawless noted that the Plaintiff's major disability involves his right elbow and that surgery may be necessary in the future. Dr. Lawless diagnosed the Plaintiff with post-traumatic osteoarthritis of the right elbow and left ankle, possible reflex sympathetic dystrophy, and carpal tunnel syndrome on the upper right extremity (R. 195–97).

In the summer of 1993, the Plaintiff complained of increasing problems with pain and limited use of his right elbow, for which he subsequently sought evaluation and consultation for surgery options. On July 12, 1993, Dr. Bruce S. Wolock, an orthopedic surgeon at John's Hopkins, reported that x-rays of the Plaintiff's right elbow showed a markedly destroyed elbow joint, and a nonunion of an olecranon fracture with a cross union of the radius and ulna (R. 198). Dr. Wolock further reported that Plaintiff had normal sensation, but had a severe degree of post-traumatic arthritis in his right elbow, making him a candidate for a total elbow replacement (R. 198–99). On July 22, 1993, Dr. Robert J. Neviaser confirmed the Plaintiff's diagnosis of marked post-traumatic arthritis, and discussed replacement surgery as an option for the Plaintiff (R. 204–205).

In October 1993, the Plaintiff underwent reconstructive surgery, an "arthroplasty," or full replacement of his right elbow. However, this treatment is not expected to restore full use of the Plaintiff's right arm (R. 28; *see* R. 198, 205).

The administrative proceedings in this case began on January 29, 1992 (protective filing date), when the Plaintiff filed applications for DIB and SSI benefits, alleging that he had been disabled and unable to work since September 15, 1991, due to his right elbow and left ankle conditions. On June 9, 1992, the Social Security Administration ("SSA") denied the Plaintiff's application for benefits, finding that he failed to satisfy the statutory standard of disability, as defined under the Social Security Act. On July 14, 1992, the Plaintiff filed a Request for Reconsideration of the SSA's decision, which the SSA denied on July 23, 1992.

The Plaintiff subsequently requested a hearing before an Administrative Law Judge, which was held on June 22, 1993, before ALJ Irwin A. Friedenberg. On September 29, 1993, ALJ Friedenberg issued a decision affirming the denial of the Plaintiff's claim for benefits (R. 57). This decision was the final decision of the Defendant, Secretary of Health and Human Services ("the Secretary"), because on February 24, 1994, the Appeals Council of the SSA denied the Plaintiff's request for a discretionary review of the ALJ's decision (R. 4).

On March 30, 1994, the Plaintiff commenced the above-captioned civil action in

this Court, seeking judicial review of the Secretary's final decision. The Defendant filed a Motion for Judgment of Affirmance, dated July 26, 1994, requesting that the Court affirm the Secretary's decision, and dismiss, with prejudice, the Plaintiff's claim. On the same day, the Plaintiff filed a Motion for Judgment of Reversal, requesting that the Court reverse and remand the Secretary's decision, and direct the Secretary to enter a finding that the Plaintiff is statutorily disabled. Alternatively, the Plaintiff requests that the Court Remand this case for reconsideration of the medical evidence. On August 1, 1994, the Plaintiff filed a Revised Motion for Judgment of Reversal, incorporating the appropriate administrative record cites, and replacing the Plaintiff's original Motion for Reversal on the record.

In the Defendant's Opposition to Plaintiff's Motion for Judgment of Reversal, the Plaintiff's Reply, the Plaintiff's Opposition to Defendant's Motion for Judgment of Affirmance, and the Defendant's Reply, the respective parties maintain their respective positions. Namely, the Plaintiff seeks reversal, while the Defendant seeks affirmance, of the Secretary's decision to deny the Plaintiff's claim for DIB and SSI benefits under the Social Security Act.

The primary dispute between the parties centers around the ALJ's findings with respect to the "third" and "fifth" steps in the sequential process for determining disability, set forth by this Circuit in *Brown v. Bowen*, 794 F.2d 703, 705–706 (D.C.Cir.1986). The ALJ's findings, disputed by the Plaintiff, are as follows:

(1) Step Three: That the Plaintiff's impairments do not meet or equal an impairment or combination of impairments listed in, or medically equal to one listed in, 20 C.F.R. Part 404, Subpt. P, Appendix 1 ("the Listing of Impairments"); and

(2) Step Five: That the Plaintiff has the residual functional capacity to perform the full range of light work.

(R. 66). The parties do not dispute, however, that the Plaintiff satisfies the other three steps in the evaluation process. The ALJ concluded, according to its findings under the evaluation process, that the Plaintiff is not entitled to receive DIB and SSI benefits under the Social Security Act.

## DISCUSSION

### I. STANDARD OF REVIEW APPLICABLE TO THIS CASE

The parties do not dispute that, on review, the Court must evaluate the administrative record, and only affirm the Secretary's decision if it is supported by "substantial evidence" in the record, and is not tainted by an error of law. 42 U.S.C. §§ 405(g), 1383(c)(3); *See Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C.Cir.1987). "Substantial evidence" has been defined as "more than a scintilla." *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). It is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The standard of review in cases of this kind requires considerable deference to the decision rendered by the ALJ and the Appeals Council, but the reviewing court remains obligated to ensure that any decision rests upon substantial evidence. Accordingly, this standard of review "calls for careful scrutiny of the entire record," to determine whether the Secretary, acting through the ALJ, "has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits...." *See Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C.Cir.1989) (citations omitted).

In addition, because the broad purposes of the Social Security Act require a liberal construction in favor of disability, *see Taylor v. Heckler*, 595 F.Supp. 489, 493 (D.D.C.1984) (Parker, J.), the Court must view the evidence in the light most favorable to the claimant. *See Champion v. Califano*, 440 F.Supp. 1014, 1018 (D.D.C.1977) (Gasch, J.). This way, the Court can give effect to the remedial purposes of the Social Security Act.

### II. STATUTORY AND REGULATORY FRAMEWORK APPLICABLE TO THIS CASE

Under the Social Security Act, the Social Security Administration must provide certain

benefits to individuals who meet the definition of "disability," and other criteria set forth in 42 U.S.C. § 423. The Social Security Act defines "disability" as:

[T]he inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A) (1982).

Under the controlling regulations, the Secretary has established a sequential five-step process for evaluating whether an individual is "disabled" or not. 20 C.F.R. § 404.1520 (1983). The United States Court of Appeals for the District of Columbia has summarized this five-step process as follows:

(1) First, if the Secretary finds that an individual is engaged in substantial gainful work, that individual is deemed "not disabled," despite any medical evidence or other contraindications. *Id.* §§ 404.-1520(b), 416.920(b);

(2) Second, if the Secretary finds that an individual has a "severe" impairment, that individual is deemed "disabled." *Id.* §§ 404.1520(b), 416.920(c);

(3) Third, if the Secretary finds that an impairment suffered by an individual is one which lasts for the requisite duration, and is listed in the Secretary's regulations ("the Listing of Impairments"), then the individual is deemed "disabled." *Id.* §§ 404.1520(d), 416.920(d);

(4) Fourth, if the Secretary finds that an individual who, though suffering from an "impairment," is capable of performing work that he or she has done in the past, that individual is deemed "not disabled." *Id.* §§ 404.1520(e), 416.920(e); and

(5) Fifth, if the Secretary finds that an individual who, "based upon his or her age, education, work experience and residual functional capacity ("RFC"), is capable of performing gainful work," that individual is deemed "not disabled." *Id.* §§ 404.1520(f), 416.920(f).

*See Brown v. Bowen,* 794 F.2d 703, 705–706 (D.C.Cir.1986).

Although the claimant bears the burden of proof for the initial four steps, the burden shifts to the Secretary for the fifth step. *Id.* at 706. Specifically, if a claimant has demonstrated his or her inability to perform past relevant work under step "four," the burden shifts to the agency under step "five" to demonstrate that the claimant is capable of performing other gainful work. *See William v. Shalala,* 997 F.2d 1494, 1497 (D.C.Cir.1993) (citing *Diabo v. Secretary of Health, Education and Welfare,* 627 F.2d 278, 283 (D.C.Cir.1980)).

In the instant case, the parties are in significant dispute as to whether the Secretary's decision with respect to the "third" and "fifth" steps of the evaluation process is supported by substantial evidence in the record, and based on the proper legal standards for determining disability under Title II and Title XVI of the Social Security Act. Upon consideration of the extensive record of the plaintiff's medical history and present condition, the Court finds that the Administrative Law Judge, acting on the Secretary's behalf, failed to analyze fully all the evidence before him and to explain sufficiently the weight he has given to particular items of probative evidence. Accordingly, the Court cannot grant the Government's Motion for Affirmance, but must Remand the case for further proceedings consistent with this Memorandum Opinion.

III. *THE COURT FINDS THAT THE ALJ ERRED BY FAILING TO ARTICULATE THOROUGHLY THE REASONS FOR HIS CONCLUSION THAT THE EVIDENCE SUPPORTS A FINDING THAT THE PLAINTIFF LACKS A STATUTORY DISABILITY*

A. *THE COURT FINDS THAT THERE IS INSUFFICIENT EVIDENCE TO INDICATE THAT THE ALJ CONSIDERED WHETHER THE PLAINTIFF'S IMPAIRMENT, OR COMBINATION OF IMPAIRMENTS, MEETS OR EQUALS LISTING 1.12 IN THE LISTING OF IMPAIRMENTS, UNDER STEP "THREE" OF THE EVALUATION PROCESS*

Under step "three" of the controlling regulations, the Secretary determines whether

the claimant's impairment meets or equals one of the listed impairments, set forth in Appendix 1 of Subpt. P, 20 C.F.R. Part 404 ("the Listing of Impairments"), which are deemed so severe as to preclude substantial gainful activity in the future, 20 C.F.R. § 416.920(d). If the claimant's condition, *or* combination of conditions, meets or equals the criteria of a Listing, the claimant is conclusively presumed to be disabled, and is therefore entitled to Social Security Benefits without further inquiry.

In the instant case, the Plaintiff claims that the ALJ failed to consider whether the Plaintiff's impairments, singularly or in combination, meet or equal Listing 1.12. For the following reasons, discussed in detail below, the Court agrees with the Plaintiff:

(1) The Defendant has failed to consider adequately the probative evidence indicating that Mr. Davis' elbow impairment, considered *singularly*, meets or equals Listing 1.12, and that it has lasted the requisite duration; and

(2) Even if the ALJ finds on Remand that Mr. Davis' elbow condition does not alone meet Listing 1.12, the ALJ must expressly consider the probative evidence indicating that the *combination* of Mr. Davis' impairments meets Listing 1.12.

■ With regard to the issue of whether Mr. Davis' impairment, considered *singularly*, meets or equals a Listing, the Court finds that the Secretary erred in not specifically evaluating Mr. Davis' condition under Listing 1.12, which concerns "Fractures of an Upper Extremity."[2] Listing 1.12 requires, in sum, that a claimant's impairment meet or equal the following criteria: (1) a nonunion of a fracture; (2) functional limitations of 12-month duration or expected duration; and (3) continuing surgical management. As Mr. Davis suffered a severe fracture to his right elbow, his condition should have been evaluated under this Listing. However, neither the ALJ in his written decision, nor the Appeals Council, appear to have considered Listing 1.12.

Instead, the ALJ made a general finding that the evidence failed to establish that the Plaintiff's impairments meet or equal any Listing (R. 63). The ALJ reasoned that, "[w]hile the claimant's right elbow may require replacement, this condition has not yet been shown to have been of a significant ongoing limitation for a continuous period of at least 12 months, as required by Regulations." (R. 63). However, the record contains probative evidence supporting the opposite conclusion, namely, that Mr. Davis suffered a fractured elbow which has not properly healed, and that this condition has lasted at least 12 months. Although the ALJ outlined the major findings of Drs. Thompson, Lawless, Wolock and Neviaser, he failed to supply reasons why he dismissed evidence contained in these doctors' reports which supports the contrary conclusion that Mr. Davis is disabled. For example, the ALJ failed to consider and explain adequately the weight he afforded the following very probative evidence:

(1) Dr. Wolock's Reports of June and July 1993, indicating that the Plaintiff's elbow injury, a nonunion of a fracture of the ulna, has failed to heal after his 1982 car accident (R. 198), well over 12 months prior to the hearing; in addition, the results of an x-ray taken of Mr. Davis' right elbow on November 2, 1992, which support Dr. Wolock's conclusion (R. 188, 194);[3]

(2) Consultative examinations of the Plaintiff between April 15, 1992 and July 22, 1993, over a period of 12 months, which found severe functional limitations and nonunion of the ulna (R. 170–73, 195–96, 198, 203, 204; and

---

2. This Listing covers "fractures of an upper extremity with nonunion of a fracture of the shaft of the humerus, radius, or ulna under continuing surgical management directed toward restoration of functional use of the extremity and such function was not restored or expected to be restored within 12 months after onset." 20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.12.

3. This evidence appears to be particularly relevant to the determination of when the onset of Mr. Davis' impairments occurred and, as such, should be addressed with specificity by the Secretary in support of her finding that Mr. Davis' impairments have not lasted for a continuous period of at least 12 months.

(3) Evidence that the full elbow replacement procedure performed on the Plaintiff was not expected to restore full functional use of his arm (R. 28, 198, 205), that is, evidence that the Plaintiff's impairment may be expected to last more than 12 months.

This evidence, not fully discussed by the ALJ in his report, supports Mr. Davis' claim that his condition meets Listing 1.12, as it indicates that the elbow fracture he suffered had not completely united as of November 1992 and July 1993, that his condition has been under continuing surgical management, and that the functional limitations he has experienced as a result of his condition have persisted for longer than twelve months.

While the ALJ failed to articulate adequately his reasons for concluding that Mr. Davis' condition, considered singularly, did not meet any Listing, he failed even to address the evidence in the record indicating that the *combination* of the Plaintiff's severe impairments meets or equals Listing 1.12. Even if the claimant's individual impairments do not meet or equal a Listing, the law requires the ALJ to "consider the combined effect of all [the claimant's] impairments" in determining whether the claimant is disabled. 20 C.F.R. §§ 404.1523, 416.923.

In this regard, the ALJ found generally that "the evidence of record fails to establish that the claimant's impairments, *considered singularly or in combination,* have been of sufficient severity to meet or equal the level of criteria detailed for any impairment found in the Listing of Impairments." (R. 63) (emphasis added). This statement represents the ALJ's only mention of the combined effects of the Plaintiff's impairment throughout his written decision. Such cursory attention to the combined effects of Mr. Davis' ailments is not adequate; rather, the ALJ should have specifically addressed why he found that Mr. Davis' various impairments do not together prevent him from engaging in any substantial gainful activity. The Court finds that, in particular, the ALJ should consider on Remand whether the nonunion of Mr. Davis' fracture, his post-traumatic os-

teoarthritis of the right elbow and left ankle, his possible reflex sympathetic dystrophy, his carpal tunnel syndrome of the upper right extremity, and his non-exertional limitations, including manipulative restrictions, numbness, and pain, *together* indicate that the Plaintiff's combination of conditions meets or equals any Listing.

Given the ALJ's failure to address and explain the sufficiency of the evidence with respect to whether the Plaintiff's impairments, singularly *or* in combination, meet or equal a Listing, the Court concludes that the ALJ has not complied with the "substantial evidence" rule set forth in *Richardson,* 402 U.S. at 402, 91 S.Ct. at 1427, and *Simms,* 877 F.2d at 1050, and therefore must Remand this case. The Court seeks to ensure that, upon reconsideration, the ALJ carefully articulates the basis for any determination as to the Plaintiff's degree of disability, especially with regard to the weight given to the subjective and objective evidence.

**B.** *THE COURT FINDS THAT THERE IS INSUFFICIENT EVIDENCE INDICATING THAT THE ALJ ADEQUATELY CONSIDERED WHETHER THE PLAINTIFF IS CAPABLE OF PERFORMING GAINFUL WORK, UNDER STEP "FIVE" OF THE EVALUATION PROCESS*

The Plaintiff claims that the ALJ failed to consider adequately whether the Plaintiff is capable of performing substantial gainful activity, in light of his age, education, work experience and residual functional capacity. For the following reasons, discussed in further detail below, the Court agrees with the Plaintiff:

(1) The ALJ failed to discuss certain medical evidence which supports Mr. Davis' claim that he lacks the residual functional capacity to perform the full range of light work; and

(2) The ALJ failed entirely to consider the evidence regarding Mr. Davis' non-exertional impairments [4] and, if then necessary, to introduce vocational evidence to deter-

4. In particular, the Court finds that the ALJ erred in rigidly applying the Medical-Vocational guidelines, in light of Mr. Davis' non-exertional impairments.

mine whether a significant number of jobs exist in the national economy that the Plaintiff may perform.

■ Under "step five" of the sequential evaluation process for determining disability, the Secretary bears the burden of proving that the claimant is not disabled by demonstrating that the Plaintiff is capable of performing gainful activity, in light of his age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Brown v. Bowen*, 794 F.2d 703, 705–706 (D.C.Cir.1986). RFC has been defined as the "functional level of work that the claimant can physically perform on a sustained basis." *Smith v. Bowen*, 826 F.2d 1120, 1122 (D.C.Cir.1987). To carry its burden, the Secretary must establish that there are a significant number of jobs existing in the national economy that the Plaintiff is capable of performing. *Id.*

The Secretary promulgated the Medical–Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "grids"), to aid in this fifth stage of the procedure. The grids specify whether a significant number of jobs in the national economy exist for a claimant of a given age, education, work experience and residual functional capacity. *Id.*

■ However, under certain circumstances, the Secretary must consider other relevant evidence outside the scope of the grids. The regulations provide that, if the claimant has exertional and non-exertional limitations, and is not disabled based on exertional limitations alone, then the grids may "provide a *framework* for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the non-exertional limitations." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2) (emphasis added). "[F]ull consideration must be given to all of the relevant facts." *Id.*[5] The Supreme Court of the United States has read these regulations as recognizing that "some claimants may possess limitations that are

not factored into the guidelines." *Heckler v. Campbell*, 461 U.S. 458, 462, 103 S.Ct. 1952, 1955, 76 L.Ed.2d 66 (1983). In *Heckler*, the Court cautioned that the grids apply "only when they describe a claimant's abilities and limitations accurately." *Id.* at 462 n. 5, 103 S.Ct. at 1955 n. 5. "If an individual's capabilities are not described accurately by the rule [in the grid], the regulations make clear that the individual's particular limitations must be considered." *Id.* Therefore, to the extent that the claimant's non-exertional limitations reduce his or her ability to perform jobs of which the claimant is exertionally capable, the Secretary may not solely rely on the grids. Furthermore, when the claimant has non-exertional limitations, "the Secretary must introduce expert vocational testimony or other evidence to prove that a significant number of jobs are available for the claimant." *Smith v. Bowen*, 826 F.2d at 1122 (citations omitted).

(i) *THE COURT FINDS THAT THE SECRETARY FAILED TO CONSIDER EVIDENCE DEMONSTRATING THE LIMITATIONS ON MR. DAVIS' ABILITY TO PERFORM THE FULL RANGE OF LIGHT WORK*

■ In the instant case, the Plaintiff claims that the ALJ erred in finding, under step "five," that the Plaintiff is capable of performing substantial gainful activity, and therefore is not statutorily disabled. *See* Plaintiff's Motion for Reversal, p. 25–28. More specifically, the Plaintiff claims that the Secretary erred in finding that the Plaintiff has the RFC to perform the full range of light work, as defined under 20 C.F.R. §§ 404.1567(b), 416.967(b). *Id.* With respect to this issue, the Court finds, upon consideration of the ALJ's decision, that it is not apparent that all the evidence was given sufficient attention by the ALJ. For example, the ALJ did not adequately discuss the following:

(1) The evidence reported by Dr. Willie Thompson, which indicated that the Plain-

5. The Secretary's regulations state in pertinent part that:

Since the rules are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs, they may not be fully applicable where the nature of an individual's impairment does not result in such limitations. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.-00(e).

tiff is incapable of performing substantially all of the activities included in the definition of light work under 20 C.F.R. §§ 404.-1567(b) and 416.967(b), in light of his exertional impairments, (R. 173);[6] and

(2) The findings of two representatives of the Social Security Administration, which confirm Dr. Thompson's conclusions (R. 174–80).

Accordingly, because the ALJ did not thoroughly articulate his findings with respect to all the evidence supporting Mr. Davis' claim that he lacks the RFC to perform the full range of light work, the Court must Remand this matter to the ALJ for further consideration of the medical evidence regarding the Plaintiff's RFC.

(ii) *THE COURT FINDS THAT THE SECRETARY FAILED ENTIRELY TO CONSIDER EVIDENCE REGARDING MR. DAVIS' NONEXERTIONAL IMPAIRMENTS*

■ The Plaintiff further asserts that, because the Secretary failed to consider his nonexertional impairments, the Secretary erred in applying the grids in the Plaintiff's case. *Id.* at 29–42. With respect to this issue, the Court again finds that, upon consideration of the ALJ's decision, it is not apparent from the context that all the evidence was afforded sufficient consideration by the ALJ. For example, the ALJ did not adequately discuss the subjective evidence by the Plaintiff, indicating that he cannot sit or stand for prolonged periods of time, cannot climb, and feels numbness in his hands (R. 198, 217; R. 176).[7] Because these types of conditions constitute non-exertional impairments, not contemplated in the grids, see 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.-00(e)(2), the ALJ must carefully consider such subjective evidence and use the grids

only as a "framework" for these findings. *Smith v. Bowen,* 826 F.2d at 1122. Furthermore, if the ALJ finds that the Plaintiff has non-exertional impairments, he must introduce vocational evidence to determine whether a significant number of jobs exist in the national economy that the Plaintiff may perform, thereby establishing that the Plaintiff lacks a statutory disability. *Smith v. Bowen,* 826 F.2d at 1122.

In this case, the ALJ did not make an express finding that the Plaintiff lacks non-exertional impairments, nor did the ALJ appear to attach any specific significance to the Plaintiff's subjective evidence. Rather, the ALJ relied solely on the grids in determining whether the Plaintiff is capable of performing gainful work, that is, whether the Plaintiff can perform jobs in the national economy. Consequently, the Court must Remand this case for further consideration of whether the Plaintiff's subjective complaints constitute non-exertional impairments and, if so, whether vocational testimony indicates that the Plaintiff remains capable of performing gainful work.

For the foregoing reasons, the Court must Deny the Government's Motion for Affirmance at this time and Remand this case for further proceedings consistent with this Memorandum Opinion. Viewing the evidence in the light most favorable to the Plaintiff, the Court finds that the inadequacy of the ALJ's proffered justifications for finding that the Plaintiff lacks a statutory disability warrants remanding this matter to the ALJ for full consideration of all the evidence in this case and an explicit explanation of the weight the ALJ has given to pieces of probative evidence that were not adequately addressed in his Decision of September 29, 1993.

6. The Social Security regulations define "light work" as involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involved sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, he or she is also considered capable of doing sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of times. 20 C.F.R. §§ 404.1567(b), 416.967(b).

7. *See also* R. 127, 171, 172, 196, 198, 204 (limited range of motion in right elbow); R. 127, 172, 196, 203, 204 (total loss of pronation and supination); R. 175, 177, 173 (loss of motion limits ability to reach).

## CONCLUSION

Upon careful consideration of the parties' Motions, all the papers filed in this case, the applicable law, the administrative record, and for the foregoing articulated reasons, the Court finds that the Secretary's final decision must be Remanded to the ALJ because the Court cannot find, upon examination of the ALJ's decision, that the ALJ's determination is supported by substantial evidence on the basis of the record as a whole.[8] In Remanding this case, the Court emphasizes that the denial or award of benefits to an individual merits a careful explanation of the bases for the ALJ's reliance on, or disregard, of any and all relevant evidence. Furthermore, the Court finds that ninety days from the date of this Court's Memorandum Opinion and Order is a reasonable time within which the ALJ may conduct additional proceedings in accordance with this Court's Memorandum Opinion and Order. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

---

**8.** The Court has the power to Remand on this ground pursuant to 42 U.S.C. § 405(g), which states in pertinent part that:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive....