Sharlene WARE o/b/o Raynard
Ware Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. 02–1258 (RJL).

United States District Court,
District of Columbia.

July 26, 2004.

Stephen F. Shea, Silver Spring, MD, for
Plaintiff.

Fred E. Haynes, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Before the Court are the plaintiff's motion for a judgment of reversal and the defendant's motion for a judgment of affirmance. The plaintiff, Sharlene Ware o/b/o her son, Raynard Ware, moves for reversal of a decision under 42 U.S.C. § 405(g) issued by the defendant, Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner"). This decision denied Supplemental Security Income ("SSI") benefits to Raynard Ware on the ground that he is not disabled under the Social Security Act, 42 U.S.C. § 301 et seq. The plaintiff claims that the defendant's final decision inadequately analyzed the evidence presented and was not based on substantial evidence. She moves for reversal of the decision or, in the alternative, for remand of her claims to the Social Security Administration ("SSA").

The Commissioner moves for a judgment of affirmance of the decision of the Administrative Law Judge (ALJ) denying benefits on the grounds that the decision was both sufficiently explanatory and based on substantial evidence.

For the following reasons, the Court DENIES both the plaintiff's motion for a judgment of reversal and motion to remand this case. The Court GRANTS the defendant's motion for a judgment of affirmance.

### Discussion

#### I. Procedural Background

The plaintiff first applied to the Social Security Administration (SSA) for a disability benefits payment to supplement her monthly income on May 30, 2000, on the grounds that her son, Raynard Ware, suffers from attention deficit hyperactivity disorder (ADHD), a learning disability, and a mood disorder. Mem. in Supp. of Pl.'s Mot. for J. of Reversal ("Pl.'s Mot for J. of Reversal") at 1.

On August 4, 2000, the SSA denied the plaintiff's disability claim. (R. at 60, 62.) On March 8, 2001, the SSA reconsidered the plaintiff's claim and again denied her benefits. (R. at 61.) At a subsequent hearing, requested by the plaintiff, an Administrative Law Judge (ALJ) issued a third denial of the plaintiff's benefits request on January 22, 2002. (R. at 28.) Raynard Ware was in third grade at the time. (R. at 18.) The SSA Appeals Council subsequently denied the plaintiff's request for a review of the ALJ's determination on April 25, 2002, at which point the ALJ decision became final. (R. at 4–5.)

#### II. Administrative Record

The ALJ evaluated Raynard Ware's condition on the basis of evidence that included testimony from Raynard and his mother, test scores, and reports from six physicians and one of Raynard Ware's teachers.

In April 2000, approximately one month prior to the plaintiff's application for SSI benefits, Raynard Ware underwent his first psychological evaluation. (R. at 14.) Raynard showed no signs of hyperactivity during the test (R. at 14–15), and Wechsler Individual Achievement Test (WIAT) scores revealed that he was slightly above grade level in math, approximately on grade level in reading, and a little below grade level in reading and decoding words (R. at 15).

One month later, the plaintiff sent her son for another psychiatric evaluation. (R. at 15.) Marilyn Benoit, M.D., found that Rayhard was of average intelligence, had good impulse control, and could maintain concentration throughout the interview. *Id.* In the fall of that same year, Raynard Ware's second grade special education

teacher, Deborah Robinson, evaluated him (R. at 15) and found that he was progressing in reading and math and working well with both adults and his peers (R. at 15–16).

In 2001, the SSA referred Raynard Ware for psychological and medical evaluations as part of its disability benefits determination. (R. at 16.) Psychologist Neil Schiff, Ph.D., found that Raynard Ware was pleasant, well-behaved, and alert. (R. at 16.) While testing indicated that Raynard's verbal I.Q. was below average, his full scale I.Q. was average. (R. at 16.) M.T. Snow, M.D., reported that Raynard was slender and fidgety but also cooperative and able to follow directions. (R. at 16–17.)

In May 2001, the D.C. Public School Special Education Department referred Raynard Ware to Dr. Ada Vincent for a psychological evaluation because of Raynard's aggression toward his peers. (R. at 17.) He suffered from low self-esteem, sometimes thought about suicide, and appeared angry (R. at 17), so Vincent recommended psychostimulant therapy (R. at 260).

In August 2001, psychologist Marcia Gustafson, M.Ed., recommended individual and family therapy for Raynard. (R. at 17–18.) Raynard's Individualized Education Program ("IEP") report for the 2001–2002 school year indicated that he should spend three and a half hours each day in special education classes and receive one and a half hours of counseling each week. (R. at 17.)

Thus, three physicians, Drs. Schiff, Vincent, and Gustafson diagnosed Raynard Ware with ADHD. (R. at 16–18) Additionally, Vincent and Gustafson diagnosed Raynard Ware with impulse and dysthymic disorders. (R. at 17–18.) Schiff's diagnosis included depressive disorder (R. at 16), and Gustafson's included possible post-traumatic stress disorder (R. at 18).

At the ALJ hearing, the plaintiff noted that her son fought with his sisters and had been suspended from school six times, but Raynard testified that his behavior improved in third grade. (R. at 18.)

Based on the above findings, the plaintiff moves for a judgment of reversal of the ALJ decision on the grounds that the ALJ: (1) failed to adequately explain his consideration of the above evidence and (2) issued an incorrect finding that Raynard Ware is not disabled according to the standards of the Social Security Act. Pl.'s Mot. for J. of Reversal at 11. The Commissioner moves for a judgment of affirmance on the grounds that the ALJ: (1) sufficiently explained his decision and (2) based his decision on substantial evidence. Mem. of P. & A. in Supp. of Def.'s Mot. for J. of Affirmance ("Def.'s Mot. for J. of Affirmance") at 16.

*III. Disability Determination for Juveniles and Medical Considerations under the Social Security Act, 20 C.F.R. §§ 416.924–930, and the Decision of the ALJ*

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. 423(d)(1)(A).

There is a three-step, sequential process for determining whether a child is disabled for the purposes of receiving benefits. 20 C.F.R. § 416.924(a). The three sequential determinations are as follows: (1) whether a child is engaged in substantial gainful activity; (2) whether a child has one, or a combination of, impairments that are considered to be severe; and (3) whether the child's impairment (a) "meets" or "medically equals" or (b) "functionally equals" one of the impairments listed in 20 C.F.R., Pt.

404, Subpt. P, App. 1, such as a mood disorder or a learning disability. *Id.* In addition, the child's impairment must last for the required duration period, which can vary by impairment. *Id.* § 416.925(a).

In this case, the ALJ found that Raynard Ware satisfied the first two steps of the evaluation. (R. at 14.) He has never performed substantial gainful employment and is severely impaired. *Id.* However, the ALJ denied benefits because he determined that Raynard Ware's condition did not "meet or medically equal"[1] or "functionally equal"[2] any listed impairment. (R. at 26–27.)

## Analysis

### I. Standard of Review

■ A claimant requesting disability benefits bears the burden of proving to the Social Security Commissioner that he is disabled. 20 C.F.R. § 416.912(a). That said, in keeping with the general purposes underlying the Social Security Act, there is a "liberal construction in favor of disability." *Davis v. Shalala*, 862 F.Supp. 1, 4 (D.D.C.1994). Therefore, the administrative agency must view evidence in the most favorable light for the claimant. *Champion v. Califano*, 440 F.Supp. 1014, 1018 (D.D.C.1977).

Even though the law favors the party requesting benefits, considerable deference must be accorded to an ALJ determination regarding those benefits. *Davis*, 862 F.Supp. at 4. Therefore, the ALJ's findings of fact are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consol. Edison Co. v.*

---

1. The ALJ found that Raynard Ware's condition did not "meet or medically equal" the following listed impairments: (1) Listing 112.04/mood disorders; (2) Listing 112.05/mental retardation; or (3) Listing 112.11/ADHD. (R. at 18.) On appeal, the plaintiff did not contest the ALJ's findings regarding listings 112.05 and 112.11, *see* Pl.'s Mot. for J. of Reversal at 6–11, so the Court will not address those determinations.

2. There are six broad areas of a child's functional abilities that the ALJ must assess at this stage of the analysis, including: (1) "Acquiring & using information"; (2) "Attending & completing tasks"; (3) "Interacting & relating with others"; (4) "Moving about & manipulating objects"; (5) "Caring for yourself"; and, (6) "Health & physical well-being." 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To qualify, a child must face an "extreme" limitation in one of the six areas or "marked" limitation in two areas. *Id.* § 416.926a(a). The ALJ concluded that Raynard Ware suffered from some limitation in four of the six areas of functioning but that none of these limitations were severe enough for him to qualify as "disabled" under the Social Security Act. (R. at 26.)

"Extreme" limitation exists when a child's impairment interferes "very seriously" with his "ability to independently initiate, sustain, or complete activities" but does not necessarily mean that the child is completely unable to function. *Id.* § 416.926a(e)(3). One measurement of "extreme" limitation is when a child under the age of 18 has "a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and [his] day-to-day functioning in domain-related activities is consistent with that score." *Id.* § 416.926a(e)(3)(iii).

A "marked" limitation is " 'more than moderate' but 'less than extreme' " and exists when a child's impairment interferes "seriously" with his ability to initiate or complete activities. *Id.* § 416.926a(e)(2). "Marked limitation" can also be defined as when a child under the age of 18 has "a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test...." *Id.* § 416.926a(e)(2)(iii).

*NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The D.C. Circuit has clarified that the Supreme Court's definition of substantial evidence as "more than a mere scintilla," *Consol. Edison*, 305 U.S. at 229, 59 S.Ct. 206, is satisfied by "something less than a preponderance of the evidence." *FPL Energy Maine Hydro LLC v. FERC*, 287 F.3d 1151, 1160 (D.C.Cir.2002).

If substantial evidence exists and the ALJ's decision is not based on an error in law, this Court must affirm the ALJ's ruling. *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C.Cir.1987). This Court is not to review the case "de novo" or reweigh the evidence, *Davis v. Heckler,* 566 F.Supp. 1193, 1195 (D.D.C.1983), but the Court must reexamine the entire record to see if it contains substantial evidence, *Poulin v. Bowen*, 817 F.2d 865, 870 (D.C.Cir.1987). In addition, district courts must determine whether the ALJ analyzed all of the evidence and sufficiently explained the effect of probative exhibits on his decision. *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C.Cir.1989).

## II. Discussion

The plaintiff moves for reversal of the ALJ decision denying benefits on the following grounds: (1) first, that the ALJ failed to sufficiently explain his finding that the plaintiff's son was ineligible for SSI benefits and (2) second, that the ALJ's finding was not supported by substantial

evidence. Pl.'s Mot. for J. of Reversal at 11. For the following reasons, the Court disagrees.

### A. Sufficiency of the ALJ's Explanation of his Decision

■ The plaintiff's first argument is that the ALJ insufficiently explained his determination that Raynard Ware's condition did not (a) "meet" or "medically equal" or (b) "functionally equal" any listed impairment. *Id.* at 9. In conjunction with this argument, the plaintiff claims that the ALJ neglected to gather relevant evidence that was necessary for his determination.[3] *Id.* at 13–14.

The Administrative Procedure Act and the Social Security Act establish a standard for the information that must be included in the SSA's administrative findings: a case statement, a discussion of the evidence, and a statement of the Commissioner's conclusions along with his reasoning. 5 U.S.C. § 557(c); 42 U.S.C. § 405(b)(1). Here, the ALJ met this standard by clearly stating his findings with respect to whether Raynard Ware's condition (a) "meets" or "medically equals" or (b) "functionally equals" any listed impairment. (R. at 26–27.) The ALJ listed the evidence underlying his findings and explained which evidence related to each of his two findings. (R. at 14–26.)

Regarding the "meets" or "medically equals" analysis,[4] the ALJ integrated evi-

---

**3.** The plaintiff also notes that this Court cannot rely on appellate arguments absent from the ALJ's written decision. Pl.'s Opp'n to Def.'s Mot. for J. of Affirmance ("Pl.'s Opp'n to J. of Affirmance") at 2–3. According to the Supreme Court, the court reviewing the agency's decision is limited to the grounds that the agency invokes for its decision. *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947); *see, e.g., Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999) (stating that a counsel's post hoc rationalizations on behalf of an agency may not be accepted by the reviewing court). As the

ALJ's decision in this case included all of the dispositive evidence that the defendant has addressed on appeal, the plaintiff's argument is of no effect.

**4.** The plaintiff argues specifically that the ALJ inadequately explained his decision by failing to reference the particular elements of Listing 112.04 (mood disorders) that were not satisfied by Raynard Ware's condition. Pl.'s Mot. for J. of Reversal at 9. However, the plaintiff does not cite any case requiring this level of detail. *See id.*

dence from the Wares' testimonies, test scores, and reports from six physicians and one school instructor. (R. at 14–18.) By considering this array of evidence and listing it as support for his benefits decision, the ALJ adequately reviewed the plaintiff's claims. *See, e.g., Williams v. Shalala,* 997 F.2d 1494, 1499 (D.C.Cir. 1993) (finding that the decision's reference to contradictory evidence sufficed because the administrative "record supplies the reason" for the decision); *Marshall v. Sullivan,* 1990 WL 179611, *4 (D.D.C. Oct. 30, 1990) (finding that consideration of all of the medical evidence was adequate).

The ALJ also clearly stated his finding that Raynard Ware did not suffer a "marked" limitation in any of the six domain areas of functioning under the "functionally equals" requirements of 20 C.F.R. § 416.926a(b)(1). (R. at 26.) In contradiction to the plaintiff's contention that the ALJ's "functionally equals" analysis completely excluded evidence from Drs. Schiff and Gustafson, Pl.'s Opp'n to J. of Affirmance at 6, the ALJ's analysis included I.Q. test scores that both psychologists' reports had referenced. (R. at 21–22). Furthermore, the ALJ weighed positive and negative facts included in seven different reports about Raynard Ware's condition against the criteria that must be examined under each of the six domains.[5] (R. at 19–26.)

Finally, the plaintiff argues that the ALJ erred by failing to gather certain necessary evidence in the form of elementary school records. Pl.'s Mot. for J. of Reversal at 13–14. However, the ALJ had access to much of this information since the physician reports examined by the ALJ contained information from

these "overlooked" reports or comparable evidence. *See id.;* (R. at 256–259). Moreover, the ALJ is required to obtain additional records only when the ALJ has insufficient evidence to reach a disability determination, 20 C.F.R. § 416.927(c), which was not the case here.

Based on the foregoing analysis, this Court finds that the ALJ adequately developed the record and sufficiently explained his denial of benefits to Raynard Ware.

**B.** *Substantial Evidence Supports the ALJ's Disability Determination*

The plaintiff's second argument on appeal is that the ALJ erred by finding that Raynard Ware's condition did not "meet" or "medically equal" Listed Impairment 112.04 regarding mood disorders and also erred by finding that her son's condition did not "functionally equal" any listed impairment. Pl.'s Mot. for J. of Reversal at 10, 12. For the following reasons, the Court disagrees.

**1. "Meets" or "Medically Equals"**

As long as substantial evidence supports the ALJ's finding, the ALJ's ruling must be upheld. *See* 42 U.S.C. § 405(g). Based on its evaluation of the administrative record, the Court finds that the ALJ's finding that Raynard Ware's condition did not "meet" or "medically equal" the elements of Listing 112.04 was supported by substantial evidence.

To meet or equal Listed Impairment 112.04, a claimant's condition must satisfy two elements: paragraph A, which describes a collection of required medical findings, and paragraph B, which describes functional limitations that must exist as a

---

5. In contrast to *Davis v. Shalala,* 862 F.Supp. 1, 6 (D.D.C.1994), in which the ALJ erred by omitting an explanation of why he dismissed facts contradictory to his ruling, here the ALJ detailed specifically which evidence supported his determination regarding each domain—evidence that could be weighed both for and against his "functionally equals" analysis. (R. at 19–26.)

result of the disorder addressed in paragraph A.[6] 20 C.F.R. Pt. 404, Subpt. P.App. 1, Listing 112.00(A). Paragraph A can be satisfied in one of several ways. *Id.* at Listing 112.04(A). The first alternative, titled "major depressive syndrome," requires a claimant to suffer a "medically documented persistence" of five out of ten listed criteria.[7] *Id.* Paragraph B requires a claimant to satisfy two out of the four criteria listed in paragraph B2 of Listed Impairment 112.02. *Id.* at Listing 112.04(B).

### i. *Paragraph A, Listing 112.04*

On appeal, the plaintiff argues that her son qualifies for paragraph A's "major depressive syndrome" by suffering from the following six criteria: (1) a depressed or irritable mood; (2) sleep disturbance; (3) suicidal thoughts or acts; (4) fatigue or loss of energy; (5) feelings of worthlessness or guilt; and (6) difficulty thinking or concentrating. Pl.'s Mot. for J. of Reversal at 10. Raynard Ware must suffer from at least five paragraph A criteria to qualify for benefits, so a finding that his condition fails to fulfill even two of the six criteria cited by the plaintiff would support affirmance of the ALJ's ruling.

This Court finds that the evidence cited by the plaintiff regarding three of the criteria—fatigue, feelings of worthlessness, and difficulty concentrating—was insufficient, in the light of the entire record, to support a finding in the plaintiff's favor. For example, regarding concentration, three physician reports recounting Raynard Ware's attentiveness and intact concentration (R. at 15–17) contrast the plaintiff's citation of one report describing her son's "distracted quality," Pl.'s Mot. for J. of Reversal at 10.

While the plaintiff cited stronger evidence to support a finding that Raynard Ware was depressed, the Court finds that substantial evidence supports affirmance of the ALJ decision even with respect to this factor. Regarding depression, the plaintiff noted Dr. Vincent's report that

---

6. Listing 112.04 Mood Disorders:

   "Characterized by a disturbance of mood (referring to a prolonged emotion that colors the whole psychic life, generally involving either depression or elation), accompanied by a full or partial manic or depressive syndrome. The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
   A. Medically documented persistence, either continuous or intermittent, of one of the following:
   1. Major depressive syndrome, characterized by at least five of the following, which must include either depressed or irritable mood or markedly diminished interest or pleasure: a. Depressed or irritable mood; or b. Markedly diminished interest or pleasure in almost all activities; or c. Appetite or weight increase or decrease, or failure to make expected weight gains; or d. Sleep disturbance; or e. Psychomotor agitation or retardation; or f. Fatigue or loss of energy; or g. Feelings of worthlessness or guilt; or h. Difficulty thinking or concentrating; or i. Suicidal thoughts or acts; or j. Hallucinations, delusions, or paranoid thinking;...
   AND
   B....for children (age 3 to attainment of age 18)...at least two of the appropriate age-group criteria in paragraph B2 of 112.02."
   Paragraph B2 of 112.02:
   "For children (age 3 to attainment of age 18), resulting in at least two of the following: a. Marked impairment in age-appropriate cognitive/communicative function...; or b. Marked impairment in age-appropriate social functioning...; or c. Marked impairment in age-appropriate personal functioning...; or d. Marked difficulties in maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

7. To qualify as having a major depressive syndrome, one of the five criteria met by the child's condition must be either a "depressed or irritable mood" or "markedly diminished interest or pleasure." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 112.04(A)(1).

Raynard suffers from depression and Dr. Gustafson's report that Raynard scored 50 on the Global Assessment of Function (GAF) test, demonstrating "severe" emotional disturbance. *Id.* In contrast, Dr. Vincent gave Raynard a moderate score of 51 on the GAF, *id.*, and Raynard testified that his behavior improved after switching to a new school (R. at 18). Because there was evidence both for and against a finding of depression and the ALJ's decision requires "something less than a preponderance of the evidence," *FPL Energy Maine Hydro,* 287 F.3d at 1160, substantial evidence supports a finding that Raynard Ware's condition did not meet this criterion.

Because evidence in the record indicated that Raynard Ware's condition did not satisfy at least four of the six criteria cited by the plaintiff, the Court finds that substantial evidence supports the ALJ determination that Raynard's condition did not satisfy paragraph A of Listing 112.04 under the "meet" or "medically equals" analysis.

### ii. Paragraph B, Listing 112.04

In addition to satisfying the medical findings required in paragraph A, to "meet" or "medically equal" Listing 112.04 the claimant must satisfy the functional limitations described in paragraph B. Paragraph B requires the claimant to face "marked" impairment in two of the following four criteria: (1) social functioning; (2) cognitive/communicative functioning; (3) personal functioning; or (4) maintaining concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 112.04(B) (referring to Listing 112.02(B)(2)). "Marked" is "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2).

The plaintiff argues that her son faces "marked" impairment in the three areas of social, cognitive, and personal functioning. Pl.'s Mot. for J. of Reversal at 11. She cites Dr. Schiff's evaluation, which included test results from the Vineland Adaptive Behavior Scales ("VABS") indicating that Raynard's condition was insufficiently severe in the area of social functioning. (R. at 216.) Regarding cognitive functioning, Dr. Schiff's I.Q. test resulted in age-appropriate scores for Raynard that conflicted with the VABS. (R. at 218.) The ALJ may rely on the I.Q. results to support a conclusion that Raynard's cognitive limitations were not "marked." *See Williams,* 997 F.2d at 1498–99 (finding that an ALJ is not required to defer to a physician's diagnosis that contradicts his own earlier analysis). Even though the VABS scores may indicate "marked" limitation in personal functioning, substantial evidence supports a finding that Raynard was not sufficiently limited in the social and cognitive areas, thereby falling short of the two limitations required by paragraph B.

Because this Court has determined that substantial evidence supports a finding that Raynard Ware's condition satisfied neither paragraph A nor paragraph B requirements, the Court affirms the ALJ's determination that Raynard Ware's condition neither "meets" nor "medically equals" Listing 112.04.

### 2. "Functionally Equals"

Turning to the ALJ's "functionally equals" analysis, the Court also finds that substantial evidence supports this determination. A claimant must face "extreme" limitations in at least one area, or "marked" limitations in two areas, for the ALJ to determine that his condition "functionally equals" a listed impairment. 20 C.F.R. § 416.926a(a). The ALJ weighed medical evidence against the criteria listed under each of the six general domains of functioning and concluded that Raynard Ware did not face any "marked" or "extreme" limitations. (R. at 19–26.)

On appeal, the plaintiff argues that her son has "marked" limitations in the following areas: (1) interacting and relating to others; (2) caring for oneself; and (3) acquiring and using information. Pl.'s Mot. for J. of Reversal at 12. Regarding her son's interactions with others, the plaintiff cites school suspensions, physical violence, and stealing. *Id.* However, Raynard Ware testified that his behavior improved once he started third grade in a new school (R. at 54–55), and his second grade teacher reported positive interaction with both adults and peers (R. at 158). Regarding caring for oneself, Dr. Schiff's report that Raynard has difficulty "attending to his daily needs," Pl.'s Mot. for J. of Reversal at 12, is contrasted by Raynard's testimony that he can wash his face, brush his teeth, and dress for school (R. at 51). Regarding the ability to acquire information, the plaintiff cited the negative impact of hyperactivity and depression on Raynard's academic performance, Pl.'s Mot. for J. of Reversal at 12, but test results indicate that Raynard's full scale I.Q. is average (R. at 217).

The ALJ balanced the foregoing facts to determine that Raynard's limitations in these areas were not "marked." Therefore, this Court finds that substantial evidence supports the ALJ's determination that Raynard Ware's condition does not "functionally equal" any listed impairment.

Once the Court finds that substantial evidence supports the ALJ's determination, the Court's inquiry concludes and the ALJ's decision is to be affirmed. *Brown v. Bowen,* 794 F.2d 703, 705 (D.C.Cir.1986). Therefore, based on a careful review of the administrative record, the Court affirms the ALJ's denial of disability benefits.

### ORDER

For the reasons set forth above, it is this 26th day of July, 2004, hereby

**ORDERED** that the plaintiff's Motion for Judgment of Reversal and, in the alternative, for Remand [# 10] is **DENIED**;

**ORDERED** that the defendant's Motion for Judgment of Affirmance [# 15] is **GRANTED**; and it is further

**ORDERED** that the above-captioned action shall be dismissed with prejudice.